QUEENSBORO FARM PRODUCTS, INC., Appellant, *v.* THE STATE OF
NEW YORK, Respondent.*
(Claim No. 25529.)

Third Department, July 2, 1941.

*Goldenthal Brothers* [*Jacob J. Schwartzwald* of counsel; *Nathan A. Goldenthal* with him on the brief], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*James H. Glavin, Jr.,* and *Jacob S. Honigsbaum, Assistant Attorneys-General,* of counsel], for the respondent.

SCHENCK, J. Claimant contracted for sale of milk over a period of one year to the Creedmoor State Hospital at the price of $.0644 per quart. The contract included the following provision:

" PROPOSAL AND PRICE

"All bids are to be submitted on the forms furnished and net price per quart F. O. B. point of destination shall be the basis of award.

" In the event that a price order, pursuant to the provision of Article 21 as amended by Chapter 383 of the Laws of 1937 of the Agriculture and Markets Law, is made effective by the Commissioner of Agriculture and Markets in the market where this milk

*Affg. 175 Misc. 574.

is to be delivered the Division of Standards and Purchase may in its discretion permit an adjustment of the price paid for milk delivered in accordance with such contract, so that such price will not be out of proportion to the terms of the official price regulations."

The foregoing discretional " price adjustment " clause is the source of the contention herein. During the last four months of the contract the Commissioner of Agriculture and Markets of the State of New York promulgated an order fixing the price of milk paid to producers by handlers of milk for resale in New York city at $2.45 per hundredweight plus two cents additional for administration purposes.

Claimant now contends that it could purchase milk at about $1.70 per hundredweight when it entered upon the contract, and that the increase in price pursuant to the aforesaid order would make it sustain a loss if compelled to accept only the original contract price for resale to the State institution. Claimant argues that a price adjustment should be granted to compensate for the price increase which it was compelled to pay to the producer. The action was brought in the Court of Claims which, while asserting jurisdiction in the matter, nevertheless, dismissed the claim upon the merits.

I think the judgment should be affirmed. By its very language the contract clause placed discretion for " adjustment " in the Division , of Standards and Purchase. Both parties were aware of the possibility of price increases by order or otherwise. Claimant should have considered this factor in submitting its bid. The contract did not provide for adjustment upon any definite basis nor did it provide for adjustment to the mutual satisfaction of both parties. The contract, to this extent, was, therefore, illusory. It cannot be said that the contract was unenforcible as to the disputed clause because there was no agreement there to enforce. There was a provision permitting adjustment in the discretion of one party. That this provision might not inure to the benefit of the other party was fully as manifest when the contract was entered upon as it is now. The party now claiming contractual benefits where none were provided should should not now complain.

It is elemental that the terms of a contract must be certain and explicit to make it enforcible. (*Varney* v. *Ditmars*, 217 N. Y. 223; *United Press* v. *New York Press Co.*, 164 id. 406.) A contract providing for adjustment in the discretion of one party is certainly not definite and explicit as to the contractual obligations and rights of the two parties.

In view of the fact, furthermore, that what transpired here is exactly what claimant might reasonably have expected to happen, there is no question of " abuse of discretion." The State, as a party, was simply not bound by the clause. A binding clause making specific bases for adjustment could have been agreed upon. Unfortunately for claimant. no such clause was made a part of the contract.

The question of jurisdiction has been raised by the State, the contention being that this proceeding should have been brought under article 78 of the Civil Practice Act. I do not see why we should pass upon this point. The matter is better disposed of by passing upon the merits now rather than when it might be presented again in other proceedings.

The judgment should be affirmed, with costs.

CRAPSER and FOSTER, JJ., concur; HILL, P. J., dissents in an opinion; HEFFERNAN, J., dissents in an opinion.

HILL, P. J. (dissenting). Common honesty and justice require that claimant should recover against the State. The price of milk was raised by the State during the term of the contract. The Division of Standards and Purchase was under obligation to adjust the price paid to claimant so that it would not " be out of proportion to the terms of the official price regulations."

" It is true that he does not promise in so many words that he will use reasonable efforts to place the defendant's indorsements and market her designs. We think, however, that such a promise is fairly to be implied. The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be ' instinct with an obligation ' imperfectly expressed. (SCOTT, J., in McCall Co. v. Wright, 133 App. Div. 62; Moran v. Standard Oil Co., 211 N. Y. 187, 198.) If that is so, there is a contract. * * * We are not to suppose that one party was to be placed at the mercy of the other. * * *." (Wood v. Duff-Gordon, 222 N. Y. 88.)

The judgment in favor of the State should be reversed on the law and facts, with costs, and the claimant should have judgment for the sum of $6,546.61, with interest from the 31st day of December, 1938, with costs.

The following findings of fact should be reversed: 2, 11, 12, 13, 14, 15, 17. Conclusions of law numbered 2, 3 and 4 are disapproved.

The court makes the following finding of fact: That claimant delivered 400,160 quarts of milk to the State of New York at the

Creedmoor State Hospital between the 1st day of September and the 31st day of December, 1938, both inclusive; that the price thereof was increased $.01636 per quart by reason of the promulgation of the price fixing order by the State.

Claimant is entitled to a judgment against the State for $6,546.61, with interest from the 31st day of December, 1938, with costs.

HEFFERNAN, J. (dissenting). I cannot agree with the majority. The principal facts are stated in the prevailing opinion and will not be repeated here.

Claimant and the State entered into a contract by the terms of which claimant was to supply Creedmoor State Hospital with milk during the year 1938. At the time this contract was made claimant was able to purchase milk at the rate of $1.70 per hundredweight.

On August 25, 1938, the Commissioner of Agriculture and Markets pursuant to law duly promulgated and issued an official order fixing the price of milk for the months of September, October, November and December at $2.47 per hundredweight, which included a charge of two cents per hundredweight for administration purposes. As a result of this order, instead of being able to purchase milk at $1.70 per hundredweight, claimant was required to, and did, pay the price fixed in the official order, making its loss seventy-seven cents per hundredweight. Concededly as a result of the State's proclamation claimant sustained a loss of $6,546.61.

Claimant applied for an adjustment of the contract price to the extent of the increase in its cost under the price adjustment provision of the contract. The State rejected this claim and now contends that its promise to adjust prices is an illusory one. This is far from an honorable position for the State to take. In dealing with its own citizens the State should be governed by the same rules of common honesty, fair dealing and justice which bind its citizens.

We think that the disputed provision in the contract is a binding obligation especially in view of the fact that the State by its own fiat increased the price of milk and placed the claimant in a position where it would inevitably sustain loss. The change in price was the result of the State's own mandate. Who can doubt that if there had been a reduction in price, the State under the identical clause would not have insisted upon a credit?

Undoubtedly this provision in the contract is somewhat ambiguous. It should, however, be reasonably construed. The decision under review deprives claimant of the fruits of its labor.

Simple justice, fair dealing and common honesty alike demand that we should not give judicial sanction to such a result. Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. Where the language of a contract is contradictory, obscure or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. If one construction would make it unreasonable, while another would do justice to both parties, the latter will be adopted. Every intendment is to be made against the interpretation of a contract under which it would operate as a snare. (12 Am. Jur. Contracts, § 250.) The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided. (17 C. J. S. Contracts, § 319.)

Every contract implies good faith and fair dealing between the parties to it. The courts always avoid, if possible, any construction of a contract that is unreasonable or inequitable, and especially one that will place one of the parties at the mercy of the other. (*Simon* v. *Etgen*, 213 N. Y. 589.) " Contractual obligations are fixed solely by the parties, and the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms." (*Shirai* v. *Blum*, 239 N. Y. 172.) " In the transactions of business life, sanity of end and aim is at least a presumption, albeit subject to be rebutted." (*Outlet Embroidery Co.* v. *Derwent Mills*, 254 N. Y. 179.) A contract will not be construed so as to render it oppressive or inequitable as to either party, or so as to place one of the parties at the mercy of the other, unless it is clear that such was their intention at the time the agreement was made. (*Woods* v. *Postal Telegraph-Cable Co.*, 205 Ala. 236; 87 So. 681.)

The State prepared the contract in suit. In that contract it reserved the right to adjust the price for milk delivered so that such price would " not be out of proportion to the terms of the

official price regulations." Later it fixed the price of milk at a figure ruinous to claimant. We are not willing to ignore as meaningless the promise which it made. Certainly its agreement meant something. It seems to us that the average intelligent man would not be doubtful of its meaning.

The judgment appealed from should be reversed, with costs and disbursements, and judgment directed in favor of claimant for $6,546.61, with interest.

Judgment affirmed, with costs.