Edwin Kassoff, J.
This is an action, for replevin of plaintiff’s antomobile and damages emanating from the wrongful *672 withholding of possession of such vehicle by defendant. Defendant counterclaimed for work, labor and services performed under an alleged “ Authorization to Repair ”.
Plaintiff’s vehicle was involved in an accident on May 28, 1973 and towed to defendant’s place of business in Queens. Plaintiff was not present when the accident took place, but was summoned to the scene and accompanied the driver of his vehicle to the defendant’s repair shop. At the shop, plaintiff’s driver signed an “ Authorization to Repair ”. The fact that the driver signed the authorization instead of the plaintiff is not an issue in this case because the driver executed the agreement in the presence of the plaintiff, after the authorization was read by the plaintiff. The court finds that the driver executed the authorization with the full authority of the plaintiff based on the principle of agency by estoppel.
Plaintiff also testified that the driver signed the authorization after they were assured by the defendant that the authorization was a mere formality that was a necessary prerequisite to obtaining an estimate of repairs from plaintiff’s insurance carrier and that the signing of the authorization would not in any way bind the plaintiff to have the repairs made by the defendant.
Plaintiff testified that on June 4,1973 he learned that a repair price had been agreed to by his insurance carrier and the defendant. The agreed price of repair was $1,950. Later that afternoon plaintiff went to defendant’s shop and requested a copy of the estimate. Defendant’s employee allegedly told him that there were only two copies, one for his insurance company and one for the defendant. Plaintiff was permitted to examine the estimate and inspect his vehicle. He testified that his inspection revealed that no repair work had been performed.
On June 5, 1973 plaintiff, accompanied by a witness, went to defendant’s place of business and instructed defendant not to repair his car. Plaintiff and his witness testified that no work had been performed on his vehicle at that time. Plaintiff further testified that he believed the value of his car was $2,100 and that, since the cost of repairs was $1,950, he did not want his vehicle repaired.
Later that day, plaintiff sent a telegram to the defendant, instructing him not to repair the vehicle.
Plaintiff’s attorney testified that on June 5 he called defendant and spoke with an employee and instructed him not to repair the vehicle and was advised by the employee that repair work had not started.
*673 Defendant’s employee testified that he ordered parts for the repair of the vehicle prior to reaching an agreed price with plaintiff’s carrier. Plaintiff received payment of $1,950 from his insurance carrier which he has in his possession.
The court must decide what .the effect is, if any, of a party signing an authorization to repair, when the cost of repairs is not filled in by the repair shop before presenting it to the party for signature.
The authorization ¡to repair, which the defendant claims is a binding contract, has' printed on it the words ‘ ‘ cost of repairs - * * Dollars $ * * These words are followed by blank spaces in which the price is to be inserted and are enclosed in a printed box. The price was not inserted by the defendant before the plaintiff’s agent signed the form. The defendant claims that the cost of repairs was to be determined by the plaintiff’s insurance company. The plaintiff claims that the cost was purposely left blank so that a binding contract would not be entered into until after an estimate had been made and he approved of the charges.
Few principles are better settled in the law of contracts than the proposition that, in order that there may be a valid and enforceable contract, there must be a meeting of .the minds of the contracting parties upon all the essential terms and conditions of the contract. (Watts v. Thomas Carter & Sons, 207 App. Div. 656.) There is no enforceable contract if its terms are vague, indefinite or incomplete in respect to any material fact or condition, or -as long as any essential element is left for future negotiations. (Varney v. Ditmars, 217 N. Y. 223; United Press v. New York Press Co., 164 N. Y. 406; Queensboro Farm Prods, v. State of New York, 262 App. Div. 426, affd. 287 N. Y. 797; Arnold v. Exterior Constr. Corp., 37 Misc 2d 1054; Ansorge v. Kane, 244 N. Y. 395; Keystone Hardware Corp. v. Taque, 246 N. Y. 79; Pollak v. Dapper, 245 N. Y. 628; Willmott v. Giarraputo, 5 N Y 2d 250; Kusky v. Berger, 33 Misc 2d 564; Warrin v. Charm Fashions, 193 Misc. 229.)
. When plaintiff’s agent executed the authorization to repair, the contract was incomplete as to a material element of the contract. Blank spaces pertaining to an essential element, the price of the repairs, were not filled in.
It is well settled that a signature to an incomplete paper, wanting in any substantial particular, when no delegation of authority is conferred to supply the defect, does not bind the signer without further assent on his part to completion of the *674 instrument. (Dutchess & Columbia County R. R. Co. v. Mabbett, 58 N. Y. 397; Richards v. Day, 137 N. Y. 183.)
The court finds by a fair preponderance of the credible evidence that there was no delegation of authority by the plaintiff to supply the defect. The price of the repairs in contracts of this nature is one of the most important factors to the parties and the court finds that the instrument executed by the parties lacked an essential element and was not a binding contract.
In addition, the “ Authorization to Repair ” form used by the defendant contained clauses that were drafted by the Division of Licenses of the Police Department of the City of New York to protect the motorist from deceptive practices employed by some tow truck companies in obtaining automotive repair business.
Section 436-7.0 of the Administrative Code of the City of New York sets forth the law applicable to tow truck operators in this city. Pursuant to the code, the Division of Licenses in 1966 promulgated “ Regulations Governing Towing Cars, Towing Car Owners and Towing Car Drivers.”
Subdivision 8 of section D5b of ¡this regulation states what an authorization to repair must contain and the physical layout of such form.
Defendant’s printed authorization form contains each of the required clauses. Above the space provided for the motorist’s signature is printed “ I authorize the repair of the vehicle indi-cated above, at a price as agreed to above ’ ’ (emphasis supplied).
Subdivision 2 of section D5b provides that: “ No charge for repairs not contained in such authorization shall be made without the prior consent of the person in charge of the motor vehicle.”
These provisions are designed to protect the motorist from authorizing repairs without actually knowing what the cost would be. Prior to the enactment of these regulations, motorists were often coerced into signing authorization to repair forms that did not include the cost of repairs. When the work was completed and they attempted to obtain their vehicle, they were presented with a bill that was often in excess of the reasonable value of the work performed. Because a mechanic’s lien attached to their vehicle, they could not obtain it until they paid this bill. The purpose of this regulation was to put an end to such deceptive practices by requiring the cost of repairs be given to the owner before he executed the “ Authorization to Repair ”.
The court finds nothing in section 436-7.0 of the code or of the regulations that requires a motorist to sign an ‘ ‘ Authorization *675 ¡to Repair ” before an estimate is made. Quite the opposite is true. The code and regulations were enacted to prevent this deceptive practice. The court must interpret these regulations strictly. To do otherwise would defeat their intent as consumer protection legislation.
The court finds that the defendant, by not inserting the cost of repairs before having plaintiff’s agent sign ¡the authorization, violated the intent of section -436-7.0 of the code and section D5b of the regulations and that its failure to do so was a deceptive practice and prevented ¡the formation of a contract. The court also finds as a matter of fact that the plaintiff never consented to having the car repaired by the defendant. The defendant, without statutory requirement, made an addition to the authorization form. Under the space provided for the signature of the owner, the defendant had printed in capital letters in bold face type ‘ ‘ all of the above entries must be made at the time OF PREPARATION. ’ ’
This clause gives emphasis to the requirement that the cost of repairs must be inserted before the owner is required to sign the authorization. By its failure to insert the cost of repairs, the defendant not only violated the requirements of the regulations, but failed to fulfill a necessary self-imposed prerequisite to forming a binding contract.
Defendant also is not aided by section 184 of the Lien Law which gives the garageman a lien only when .the owner of the ear requests the garageman to make repairs or consents thereto. (Bateman v. Clark, 263 App. Div. 789; New York Yellow Cab Co. Sales Agency v. Laurel Garage, 219 App. Div. 329; Hartford Fire Ins. Co. v. Albertson, 59 Misc 2d 207.) Plaintiff in this action did not request that the repairs be made or consent to the repairs.
Defendant’s counterclaim for $1,950 for the repair of the automobile is dismissed. The court has ruled that there was no enforceable contract between the parties because a material element of the contract, the price, was omitted by the defendant and that this omission prevented a meeting of the minds. The court also found that this omission of price was a deceptive practice in violation of the intent of the Administrative Code and the regulations governing tow truck companies. To permit the defendant to recover anything would substantially weaken the intent of the code and the 'regulations.
Also the court cannot decide the question of equitable relief for three reasons: first, there was no equitable relief requested by the defendant; second, the court finds that defendant did not *676 come into court with clean hands in that he did actively engage in deceptive and misleading practices; and, third, it would defeat the purpose of the regulation.
The court is cognizant that its rulings give possession of the vehicle to the plaintiff and also permit him to retain the $1,950 paid to him by his insurance company. The insurance company’s payment to the plaintiff was in compliance with its contractual obligations. The fact that the court is permitting the plaintiff to retain this money does not injure the carrier since it would have to make payment under its contract with the plaintiff in any case.
It would not be in the best interest of justice to permit a defendant who has engaged in deceptive practices, in violation of regulations promulgated to protect the consumer, to profit from his actions. This approach has been adopted in many statutes enacted in this State and may be related to this case by analogy.
Section 396 of the General Business Law states that it shall be an unlawful selling practice for any person or firm to send unsolicited goods to anyone. Any person who receives such goods may deem them to be an unconditional gift and may dispose of the same in any manner he wishes without any obligation on his part to the sender.
The “ Home Solicitation Sales Act ”, article 10-A of the Personal Property Law, provides in section 430 that if the seller fails to demand possession of the goods within a reasonable time after the buyer legally cancels or revokes the contract, the goods shall become the property of the buyer without obligation to pay for them.
Section 5-511 of the General Obligations Law states that all instruments evidencing or securing a usurious transaction are declared to be void and subject to cancellation. Any security given must be surrendered. Through the enactment of its usury laws, the State has declared its “ public policy ” to be against the enforcement of a usurious contract.
These sections not only prohibit deceptive practices but severely punish anyone who engages in such practices. The court believes that the deceptive practices engaged in by the defendant are so flagrant that they violate public policy and that a defendant who chooses to act in such a manner should not be rewarded by the court for doing what he was prohibited by regulation from doing.
The court notes that the New York State Legislature recently enacted a bill that adds an article 12-A to the Vehicle and Traffic *677 Law. This law was enacted after this case came before the court and is not being used by the court in rendering its decision. The new article requires the registration of motor vehicle repair shops.
The intent of the Legislature is found in section 398-a of the law which states in part: “ The purposes of this article are * * * to protect the consumers of this state from dishonest, deceptive and fraudulent practices in the repair of such motor vehicles.”
Subdivision 2 of section 398-g empowers the commissioner to “ prescribe such rules and regulations as he shall deem necessary to effectuate the purposes of this article including but not limited to, standards for personnel, equipment and facilities.”
This illustrates the intent of the Legislature to correct what they recognize to be a growing practice used by some towing concerns and repair shops that seriously affects the consumer and adversely affect the public image of the hard-working, reputable segment of the industry. The court is pleased that-the Legislature has codified to a large extent the Regulations of the Division of Licenses of the New York Police Department.
‘ ‘ The tendency today is in the direction of a growing liberalism. The new spirit has made its way gradually; and its progress, unnoticed step by step, is visible in retrospect as we look back upon the distance traversed.” (Benjamin Cardozo, The Nature of the Judicial Process, p. 101, published 1921.) The term caveat emptor has been eroded by the courts and the Legislature. Today there is a shift in the area of consumer matters toward compliance with the maxim of caveat venditor.
“ The change from caveat emptor to caveat venditor has not been particularly subtle, although it does seem to have been slow to come to the attention of many who have vital interests in commercial activity. The changing expectation of society with regard to anticipated standards of performance in business dealings are evidenced by the very real power of the present consumer movement. The courts and legislative bodies have apparently sensed the need for change and have taken action in a number of areas.” (Caveat Venditor Forever More? by John W. Goebel, Business Law Review [North Atlantic Regional], p. 6.)
Accordingly, the court finds for the plaintiff in his action for replevin and dismisses the defendant’s counterclaim.