221 N.J. Super. 315 (1986)
534 A.2d 435
JOHN HUFFMASTER, PLAINTIFF,
v.
JOSEPH ROBINSON, J.A. ROBINSON AUTOMOTIVE MACHINE CENTER SHOP, J.A. ROBINSON T/A ROBINSON AUTOMOTIVE MACHINE SHOP, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided March 30, 1986.
*316 Warren S. Jones, Jr., for plaintiff (Eleuteri & Wilkins, attorneys).
Nicholas Lisi for defendants.
HAINES, A.J.S.C.
This is a consumer fraud case requiring interpretation of the Consumer Fraud Act ("act"). The court awards damages to plaintiff notwithstanding complete, good-faith performance of the parties' agreement by defendant.
Plaintiff, John Huffmaster, owned a 1974 Dodge Charger valued at $400. Not surprisingly, the car was unsound, mechanically *317 and cosmetically. In August 1984 after the car broke down, it was towed to a nearby garage and then to the Robinson shop in Philadelphia, Pennsylvania. Huffmaster and Joseph Robinson, individually, agreed that the latter would make substantial repairs to the car. According to Huffmaster, the agreed price was $2,000, which plaintiff paid in advance. Robinson testified that the agreed price was $6,000.
Robinson operates a very sophisticated machine and repair shop in Philadelphia. He rebuilt Huffmaster's car almost completely. It appears in photographs as a new vehicle. When the work was finished, Robinson requested payment of the $4,000 contract balance he understood to be due, a demand which was refused by plaintiff who believed that he had paid in full. Robinson would not release the car without the further payment and advised Huffmaster that he would be liable for storage charges. These charges amounted to $65 plus $10 per day from November 13, 1984, totalling, as of the trial date $7,690. Huffmaster made no further payments and Robinson kept the car. Huffmaster now sues for damages, including those allowed by N.J.S.A. 56:8-19, the Consumer Fraud Act. Robinson counterclaims for $4,000 plus storage charges.
Joseph Robinson was an impressive witness with many years of experience in repairing and rebuilding motor vehicles. The repair agreement was made after extensive discussion at his shop, receiving an estimate from a subcontractor and advising plaintiff by telephone of the final $6,000 figure. Plaintiff did not testify convincingly to the contract discussions and could not, on the facts, have expected to have the work performed for $2,000.
Robinson's subcontractor, who performed body work and painting, estimated the cost of that work alone at $2,200, an amount that was paid by Robinson. Miscellaneous out-of-pocket expenses incurred by Robinson amounted to an additional $480.35. The major work consisted of installing a rebuilt engine and transmission, a new carburetor, an aluminum manifold, *318 a new distributor, a new exhaust, and a custom-built driveshaft, as well as overhauling the rear end. Originally, Robinson estimated the value of his work, without subcontracting charges, at $4,500 but finally quoted a "package price" of $6,000. A description of the repair work and the $6,000 price appears on an invoice prepared by Robinson. He testified that the $2,000 payment was an advance on account of the entire price, a much more likely arrangement than Huffmaster's claim that he paid the entire price in advance. These circumstances lead the court to an obvious conclusion: the contract price was $6,000, not $2,000.
That conclusion does not resolve the dispute. Robinson failed to obtain a written authorization for the work, signed by Huffmaster, and also failed to give him a written estimate of the price. These failures were not deliberate and I find specifically that Robinson acted in good faith at all times.

A. Applicable Law.

The contract was made in Pennsylvania. Under usual rules, Pennsylvania law would apply. The complaint refers to both Pennsylvania and New Jersey law. However, no claim that Pennsylvania law applied was made by Robinson until trial commenced. Evid.R. 9(2) provides that "[j]udicial notice may be taken, without request by a party of ... the decisional, constitutional, and public statutory law and rules of court of every other state." However, sub-par. (3) further provides that:
Judicial notice shall be taken of each matter specified in paragraph (2) of this rule if a party requests it and (a) furnishes the judge sufficient information to enable him properly to comply with the request and (b) has given each adverse party notice thereof in the pleadings at least 20 days before the trial. The judge, however, may permit such notice to be given at any time in the interest of justice. In the absence of an adequate basis for taking judicial notice of the law of any jurisdiction other than this State and the United States, the judge shall apply the law of this State.
In the present case, there was adequate opportunity for defendants to request the application of Pennsylvania law prior *319 to trial. It is apparent, however, not only from the state of the pleadings, but also from the arguments made during trial, that plaintiff was prepared to deal with Pennsylvania law, if necessary. He has done so in his post-trial brief. Fairness, therefore, requires this court to take judicial notice of the Pennsylvania law. Nevertheless, New Jersey law controls.
Under former conflict of laws rules, the law of the place where the contract was made controls as to substantive matters. Marshall v. George M. Brewster and Son, Inc., 37 N.J. 176, 180 (1962). The current rule is somewhat different. It applies the "governmental interest" approach to choice of law questions. Under this approach, the court must make a value judgment as to the legitimacy of the states' competing interests. State Farm, etc. Ins. Co. v. Simmons' Est., 84 N.J. 28 (1980)
[T]he court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts between the parties and each related jurisdiction. A state is deemed interested only where the application of its law to the facts in issue will foster that state's policy. [Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 32 (3 Cir.1975) (citing Mellk v. Sarahson, 49 N.J. 226, 229 (1967) and Pfau v. Trent Aluminum Co., 55 N.J. 511 (1970))]
The New Jersey and Pennsylvania laws are different in only one important respect relevant to the present litigation: in New Jersey the assessment of treble damages and attorney's fees is mandatory when a violation of the Consumer Fraud Act has been proved. Skeer v. EMK Motors, Inc., 187 N.J. Super. 465 (App.Div. 1982). In Pennsylvania those assessments are discretionary. Pennsylvania Unfair Competition and Practice Act, 73 Pa. Cons. Stat. § 201-9.2.
"The available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation." New Mea Construction Corp. v. Harper, 203 N.J. Super. 486, 501-502 (App.Div. 1985)
We have declared that the Consumer Fraud Act "should be construed liberally in favor of protecting consumers," Levin v. Lewis, 179 N.J. Super. 193, 200 (App.Div. 1981) and have spoken of the "perceived need to liberally construe the act in favor of protecting consumers." State v. Hudson Furniture *320 Company, 165 N.J. Super. 516, 520 (App.Div. 1979). "The act is broadly designed to protect the public." [Skeer, supra, 87 N.J. Super. at 470.]
Consumers are better protected by a mandatory treble damage rule than by a discretionary one. The New Jersey policy is one of strong consumer protection. Our courts have an obligation to consider and effectuate the mandatory New Jersey policy.
Substantial New Jersey contacts are involved in this matter. John Huffmaster lives in New Jersey. The automobile which is licensed in New Jersey, was taken first to Burlington Dodge, a New Jersey shop, for repairs. It recommended defendant, who arranged to pick up the car in New Jersey and tow it to Pennsylvania. The contract, however, was made in Pennsylvania and the repair  rebuilding work took place in that state. Arguably, New Jersey and Pennsylvania have equally significant contacts. The scales are tipped in favor of New Jersey law, however, because only its application permits application of the mandatory New Jersey policy.

B. The Consumer Fraud Act; Automobile Repair Regulations.

N.J.S.A. 56:8-2 provides:
The act, use or employment by any person of any unconscionable commercial practice, deception ... in connection with the sale ... of any merchandise... whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice....
The term "merchandise" is defined by N.J.S.A. 56:8-1 to include "goods ... services or anything offered, directly or indirectly to the public for sale."
N.J.A.C. 13:45A-7.2, referring to the Consumer Fraud Act, provides that "the following acts or omissions shall be deceptive practices in the conduct of the business of an automotive repair dealer ...:
....
2. Commencing work for compensation without securing one of the following:

*321 i. specific written authorization from the customer, signed by the customer, which states the nature of the repair requested or problem presented....
....
3. Commencing work for compensation without either:
i. one of the following:
(1) providing the customer with a written estimated price to complete the repair, quoted in terms of a not-to-exceed figure; or
(2) providing the customer with a written estimated price quoted as a detailed breakdown of parts and labor necessary to complete the repair. .. .
(3) providing the customer with a written estimated price to complete a specific repair....
(4) obtaining from the customer a written authorization to proceed with repairs not in excess of a specified dollar amount...."
Robinson's failure to comply with these requirements violated the Consumer Fraud Act. His good faith makes no difference.
Violation of the Act can be shown even though a consumer has not, in fact, been misled or deceived. It is not necessary to show actual deceit or a fraudulent act; any unconscionable commercial practice is prohibited. A merchant's subjective good-faith does not excuse technical noncompliance with regulations promulgated under the Consumer Fraud Act. The Act is broadly designed to protect the public, even when a merchant acts in good faith. [Skeer, supra, 187 N.J. Super. at 470.]
Our Consumer Fraud Act does not detail the consequences of its technical violation when the underlying contract has been fully performed. Most New Jersey cases dealing with the act involve cheats and swindlers, not honest men doing honest work. In some states consumer protection laws have provided clear answers. Washington's Automotive Repair Act, for example, requires the furnishing of a written estimate before work is commenced. It further provides that "[t]he repairman may not charge for work done or parts supplied which are not a part of the written price estimate." Webb v. Ray, 38 Wash. App. 675, 688 P.2d 534 (1984). In Webb, the court held that a repairman who had failed to provide an estimate could not collect a $2,800 repair bill. To the same effect is I-5 Truck Sales & Service Co. v. Underwood, 32 Wash. App. 4, 645 P.2d 716 (1982). ("... a repairman who finds himself outside the law cannot enforce collection of these repairs either at law or in *322 equity." 645 P.2d at 720). In California the Business and Professions Code requires a written estimate and provides that an automobile repairman shall not charge for work performed or parts supplied in excess of the estimate. Schreiber v. Kelsey, 62 Cal. App.3d Supp. 45, 133 Cal. Rptr. 508 (App.Dept. Super.Ct. 1976) (Contract unenforceable notwithstanding unjust enrichment). The New Hampshire statute calls for a written estimate and states: "No work shall be done and no charges shall accrue before authorization to proceed is obtained from the customer." Brooks v. R.A. Clark's Garage, 117 N.H. 770, 378 A.2d 1144 (Sup.Ct. 1977). Brooks held: "... a written estimate must be given if recovery is to be had.... Generally the guilty party to an illegal contract cannot bring an action to enforce the contract or to recover on principles of quasi-contract the benefits he has conferred under it." 378 A.2d at 1145. New York's administrative code requires a written repair authorization setting forth the cost of repair. Campbell v. WABC Towing Corp., 78 Misc.2d 671, 356 N.Y.S.2d 455 (Sup. Ct. 1974) (Failure to comply "was a deceptive practice and prevented the formation of a contract." 356 N.Y.S.2d at 459).
The New Jersey act, while silent as to its effect upon the contract, must be read as depriving a technically violating repairman of any enforcement capacity. Otherwise, the act would make no sense. Contracts involving consumer fraud as defined in our act and our administrative code are therefore unenforceable by violators because:
(1) They are void, being contrary to public policy as expressed in the act. Vasquez v. Glassboro, Services Ass'n., 83 N.J. 86, 99 (1980); or
(2) They have not been consummated because the conditions precedent established by the Act have not been fulfilled. Campbell, supra; or
(3) They are illegal as to the violator of the Act. Williston, Contracts, (3 ed. Jaeger) § 1631, provides that "[a]n innocent plaintiff may recover on an illegal agreement which is not declared void by statute."
Here, therefore, Robinson cannot recover on the counterclaim.
Huffmaster, however, is entitled to relief. He is not a guilty party. The act was designed for his protection: N.J.S.A. 56:8-19 provides:

*323 Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorney's fees, filing fees and reasonable costs of suit.
Huffmaster could succeed in an action for replevin. He chose, however, to sue for damages. He has lost his car. It was converted by Robinson when he refused to relinquish possession to Huffmaster without the payment of $4,000 and later demanded storage charges. Conversion is
... the wrongful exercise of dominion and control over the property of another in a manner inconsistent with that other person's rights. The property converted must have belonged to the injured party. [Life Ins. Co. of Va. v. Snyder, 141 N.J. Super. 539 (1976)].
Robinson's exercise of dominion was wrongful. He had no right to the payment of any monies from Huffmaster: his repair agreement was unenforceable. This is particularly true with respect to the storage claim. Storage charges were not authorized in any written document signed by Huffmaster and were not part of any oral understanding. Nor was Robinson entitled to keep the car by virtue of any lien for repairs. New Jersey lien law (applicable since no request has been made to apply any Pennsylvania lien law) gives a garage keeper a lien for repairs to a motor vehicle and permits its detention until "the sum due" for the repairs is paid. N.J.S.A. 2A:44-21. There was no "sum due" Robinson. Furthermore, Robinson failed to prove that the storage charges were reasonable.
The car, now lost, was worth $400. Huffmaster also lost the $2,000 paid to Robinson. His total damages of $2,400 must be tripled pursuant to the act. He is therefore awarded a judgment of $7,200 with costs and reasonable attorney fees.
Counsel will submit an affidavit of services setting forth requested fees on notice to defense counsel. Defendant may *324 file opposing papers within ten days of the receipt of counsel's affidavit and will be heard on request made within that time.