884 A.2d 828 (2005)
381 N.J. Super. 75
ARTISTIC LAWN & LANDSCAPE COMPANY, INC., Plaintiff,
v.
Mike SMITH, Defendant.
Superior Court of New Jersey, Law Division, Special Civil Part, Burlington County.
Decided May 19, 2005.
*829 Jonas Singer, Bordentown, for plaintiff (Wells, Singer, Rugin & Musulin, attorneys).
*830 Adam M. Kotlar, Cherry Hill, for defendant.
HOGAN, J.S.C.
Among its many issues, this case presents for the first time the issues of whether a home improvement contract entered into between a homeowner (Smith) and a non-licensed landscape irrigation contractor (Artistic Lawn & Landscape Company, Inc.) is enforceable, and whether the homeowner is entitled to a refund of his money pursuant to N.J.S.A. 56:8-2.11 of the New Jersey Consumer Fraud Act.
N.J.S.A. 45:5AA-3 requires that "no person shall engage in the business of landscape irrigation contracting without securing from the board a landscape irrigation contractor certificate in accordance with the provisions of this act."[1] The plaintiff is suing for the balance due on his contract, and the defendant is counterclaiming and asserting violations of the Consumer Fraud Act and seeking requisite treble damages and attorney fees.
On September 15, 2004, Michael Finnegan, the owner of the plaintiff company, prepared and presented for signature a document entitled "Irrigation Contract Proposal." The proposal was signed on or about September 29, 2004, by both Finnegan, owner of the plaintiff company, and the defendant, Smith. The contract was entered for the purpose of the installation of a sprinkler irrigation system in the defendant's back yard. The installation took one day. The contract consideration was $3,500. While the contract provided for a deposit of $1,500, the defendant only paid a $500 deposit. The contract consideration was reduced by $150. Plaintiff says it was because the defendant insisted on performing the system connection to the house, and the defendant says the reduction had nothing to do with the connection, but was simply a negotiated reduction of price. Plaintiff is now seeking $2,850 from the defendant.
The contract is silent as to whether the plaintiff company or any of its employees are licensed. Defendant was not aware of the requirement for a license or certificate until after the system was installed. Defendant did not pay the plaintiff after the system was installed because he believed that the plaintiff did not fulfill the terms of the contract. Plaintiff installed five sprinkler zones, but the defendant interpreted the contract as requiring the installation of nine zones. Item 1 under the contract stated: "Automatic Controller, Nine Zone LXI plus (Rainbird)."[2] The distinction between the capacity of the controller and the number of zones actually to be installed was not made clear in the contract and was not understood by the defendant. On this point, the credibility of Finnegan is severely tested. Finnegan did not testify in his case-in-chief. In fact, he was not present in the courtroom to hear his office manager testify. His office manager testified on the first day of the trial that upon learning a nine-zone Rainbird was not even available she ordered the eight-zone controller on her own because it was closest to nine zones. She did it without *831 consulting the customer. She was believable. Finnegan, on the other hand, was somewhat evasive in his testimony. He testified only on rebuttal. To the direct question by the court as to who ordered the controller, he said that he did. Finnegan said that he explained to the defendant that the controller had to be eight zones and not nine. His testimony on this point was not credible, clearly contradicting his office manager. He also tried to give the impression that he was at the defendant's home during most of the installation, but his installer's testimony hardly mentioned his presence. Clearly, Finnegan's testimony lacked credibility. His explanation that the contract called for five zones to be installed was based on Item 2 on the form contract, which stated: "Electric Valves with Boxes 4-7." Finnegan explained that this meant four to seven zones would be installed because each valve is a zone. While it may be true that each zone has electric valves, this explanation is not included in the contract. The contract is not clear.
Next, the defendant believed that the system was to provide water to his entire property, including the area on both sides of his driveway. Finnegan said that was not provided for under the contract. The contract, however, is silent as to the scope of area to which the system would provide water.
Thirdly, there was the issue as to who would tie in the system to the house. The contract provides that the plaintiff would have that responsibility and would install a new "one-inch ball valve and drain spigot." It was the defendant who actually had another contractor make the final connection. The evidence shows that the plaintiff's installer tried to make the connection on the far side of the water conditioner, but because of low water pressure the defendant had to have a second contractor make the connection on the well side of the water conditioner. Plaintiff states that the defendant insisted on the tie-in be on the far side of the water conditioner so that the water would not stain his concrete. Defendant denied that.
Defendant alleges in his counterclaim that the Consumer Fraud Act has been violated. N.J.S.A. 56:8-1. Under the provisions of the Act, the three types of violations are: by affirmative acts; knowing omissions; and regulatory violations. Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454 (1994). Defendant asserts violations by the plaintiff involving affirmative acts and regulatory violations. The Act provides in relevant part:
The act, use or employment by any person of any unconscionable commercial practice . . . in connection with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. [N.J.S.A. 56:8-2]
Considering first the alleged regulatory violations. Intent is not an element of an unlawful practice arising from a violation of the regulations promulgated pursuant to the statute. The regulations impose strict liability. Feinberg v. Red Bank Volvo, Inc. 331 N.J.Super. 506, 752 A.2d 720 (App.Div.2000).
N.J.A.C. Section 13:45A-16.1, provides the regulations. A review of the contract placed in evidence together with the testimony, show clear violations as follows.
N.J.A.C. 13:45A-16.2 (a)(2) provides:
(a) Without limiting any other practices which may be unlawful under the Consumer Fraud Act, N.J.S.A., 56:8-1 et seq., utilization by a seller of the following acts and practices involving the sale, attempted sale, advertisement or performance *832 of home improvements shall be unlawful hereunder.
.....
(2) Product and material representations: Misrepresent directly or by implications that products or materials to be used in the home improvement:
N.J.A.C. 13:45A-16.2(a)(3)(iv) provides:
(iv) Substitute products or materials for those specified in the home improvement contract, or otherwise represented or sold for use in the making of home improvements by sample, illustration or model, without the knowledge or consent of the buyer.
In the present case, the contract called for a nine-zone Rainbird controller, which the defendant wanted and specified. Plaintiff had the obligation not to specify a product that does not exist. He should have informed the homeowner in advance of signing the contract that such a product as the homeowner wanted was not available. In the event that the contractor realized that only an eight-zone or twelve-zone controller of that brand was available, a written change order to the contract should have been prepared. The court notes that the contract was prepared by the contractor on September 15th and installation did not take place until September 29th, leaving adequate time to renegotiate the contract and provide a written change order with the appropriate controller, instead of the nine-zone controller specified in the original contract.
N.J.A.C. 13:45A-16.2(a)(12) provides:
All home improvement contracts for a purchase price in excess of $500, and all changes in the terms and conditions thereof shall be in writing. Home improvement contracts which are required by this subsection to be in writing, and all changes in the terms and conditions thereof, shall be signed by all parties thereto, and shall clearly and accurately set forth in legible form and in understandable language all terms and conditions of the contract, including, but not limited to, the following:
i. The legal name and business address of the seller, including the legal name and business address of the sales representative or agent who solicited or negotiated the contract for the seller;
ii. A description of the work to be done and the principal products and materials to be used or installed in performance of the contract. The description shall include, where applicable, the name, make, size, capacity, model, and model year of principal products or fixtures to be installed, and the type, grade, quality, size or quantity of principal building or construction materials to be used. Where specific representations are made that certain types of products or materials will be used, or the buyer has specified that certain types of products are to be used, a description of such products or materials shall be clearly set forth in the contract;

iii. The total price or other consideration to be paid by the buyer, including all finance charges. If the contract is one for time and materials, the hourly rate for labor and all other terms and conditions of the contract affecting price shall be clearly stated;
iv. The dates or time period on or within which the work is to begin and be completed by the seller;

v. A description of any mortgage or security interest to be taken in connection with the financing or sale of the home improvement and;
vi. A statement of any guarantee or warranty with respect to any products, *833 materials, labor or services made by the seller.
The evidence shows that there were two significant changes in the contract. The first is, as discussed above, that the controller was changed from a nine-zone to an eight-zone controller. And secondly, there was a change that was testified to by the plaintiff that the connection of the system to the house would no longer be done by the plaintiff as called for in the contract. Neither of these two changes was made in writing. and thus this constitutes a violation of the regulations. If there had been written changes, the dispute among these parties may never have occurred.
In addition, while the contract has a starting date, it does not provide for an ending date or a time for performance. The contractor, Finnegan, testified that was because the system was installed on the same day as the homeowner signed the agreement. The regulations do not provide for such flexibility or discretion for the contractor. As the contract is written, a contractor could have started the job in the morning and left the site not to return until some indefinite period in the future. It is this circumstance, undoubtedly, that the regulations seek to avoid.
In summary, on the regulatory issues, the court finds the contractor in violation of the Consumer Fraud Act. However, on these points the defendant, while demonstrating the contractor's liability, conceded that no damages have been proven that flowed from the regulatory violations. Defendant's counsel, while conceding this point, argues that having to defend the lawsuit and its attendant costs are, in fact, damages. However, no costs were demonstrated, other than the accrual of counsel fees, which are already provided for under the Act and, which will be further discussed.
Defendant/homeowner raises as his primary argument the fact that the contractor does not hold a certificate as a Landscape Irrigation Contractor pursuant to N.J.S.A. 45:5AA-1. The evidence confirms the fact that the plaintiff company is a landscape irrigation contractor and no persons employed by the company hold the required certificate. Plaintiff has conceded these facts as well. The defendant argues that the plaintiff acting contrary to the law undertook an unconscionable and unlawful act by entering into the subject contract contrary to the terms of the Consumer Fraud Act and, therefore, the defendant is entitled to a refund as specified under N.J.S.A. 56:8-2.11, which provides:
Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared to be unlawful.[3]
The question to be determined is whether a contractor who contracts and performs the installation of landscape irrigation for a homeowner, without first receiving a certificate as required under N.J.S.A. 45:5AA-3. is a per se violation, or otherwise unlawful act under the Consumer Fraud Act, making the contractor liable for a refund of all moneys as mandated under N.J.S.A. 56:8-2.11.
The plaintiff argues in its post trial brief:
In this case, failure to be licensed is not a regulation that the Division of Consumer Affairs has enacted and therefore not a per se violation as determined by the Attorney General pursuant to N.J.S.A. 56:8-4.
*834 Clearly, the practices set forth in the Administrative Code are per se unlawful acts if violated. N.J.A.C. 13:45A-16.2 Cox, supra, 138 N.J. 2, 647 A.2d 454. It is noteworthy to point out that the Administrative Code begins the section on unlawful practices as follows: "Without limiting any other practices which may be unlawful under the Consumer Fraud Act. . .", thus contemplating and providing for other "unlawful practices." N.J.A.C. 13:45A-16.2.
An examination of the landscape irrigation statute is in order. The Irrigation Act is a comprehensive licensing scheme established under the New Jersey Department of Environmental Protection. It created an Examining Board of six members, with five of the members being landscape irrigation contractors, and one of the five being a licensed professional engineer. The Governor, with the advice and consent of the Senate, appoints all five members. The sixth member is the Commissioner of the Department of Environmental Protection or his designee. N.J.S.A. 45:5AA-5.
The Board's duties are comprehensive as well, and are worth setting forth here:
N.J.S.A. 45:5AA-6. Powers and duties of board
The board shall:
a. Review the qualifications of an applicant for certification as a landscape irrigation contractor;
b. Insure the proper conduct and standards of examinations for the certification of landscape irrigation contractors;
c. Issue and renew certificates pursuant to this act, as appropriate;
d. Refuse to issue or renew or shall suspend or revoke a certificate issued under this act pursuant to Section 8 of this act;
e. Maintain a registry of landscape irrigation contractor certificates which shall record the name and address of the contractor, the date the certificate was issued, and the number of the certificate;
f. Adopt, pursuant to the "Administrative Procedure Act," P.L. 1968, c. 410 (C.52:14B-1 et seq.), rules and regulations to carry out the provisions of this act and;
g. Adopt, pursuant to the "Administrative Procedure Act," fees for examinations, application and renewal of a certificate. These fees shall be prescribed or changed to the extent necessary to defray the expenses incurred by the board in the performance of its duties but shall not be fixed at a level that will raise amounts in excess of the amount estimated to be so required.
Pursuant to the directions of the Legislature, the Examining Board adopted regulations for certification, which require a passing score on an examination. N.J.A.C. 7:62-2.2. The regulations provide that the Board will issue a certificate to each candidate who passes the examination and meets the other qualifications set by the Board. N.J.A.C. 7:62-2.3. The regulations provide that the certificate holder assumes full responsibility for inspection, compliance and supervision of landscape irrigation work performed by his or her company. N.J.A.C. 7:62-4.3. The regulations also provide that the certificate holder is "required" to purchase a pressure seal, and emboss all construction permit applications, construction drawings, and construction contracts with the imprint of the seal. N.J.A.C. 7:62-4.2.[4]
It is N.J.S.A. 45:5AA-3.a that is most problematical for the contractor in this case. That section provides:

*835 No person shall engage the business of landscape irrigation contracting without securing from the Board a landscape irrigation contractor certificate in accordance with the provisions of this Act.
Further, N.J.S.A. 45:5AA-11 (emphasis added) provides:
The issuance of a certificate by the Board shall authorize any certificate holder to perform landscaping irrigation contracting in any municipality, county or other political subdivision of the state, and no further examination or special license shall be required of the certificate holder, except business licenses, permit fees, and such other standard licenses and fee as may be required of any person doing business with the jurisdiction of the political subdivision.
The legislative history includes the Senate Labor, Industry and Professions Committee Statement, which demonstrates that the Legislature intended to provide a comprehensive licensing process to insure that landscape irrigation contractors possessed the requisite skill and experience to construct, repair and maintain landscape irrigation systems, including wiring that system and connection to the required power supply and connection to the water supply systems. In turn, the legislation provided as set forth above, an exemption for the licensed contractor that he or she would not be subject to further "examination or special licenses" that might otherwise be required in the multitude of political subdivisions in New Jersey. In other words, a licensed contractor had the freedom to work without further local oversight.
N.J.S.A. 45:5AA-1, which became law in 1991, provides for no exceptions, other than for individuals licensed or certified under other laws.
This statute has been in place for nearly fifteen years, and Finnegan testified he has been in business for nineteen years. There can be no excuse for this contractor to knowingly enter into the subject contract, and presumably others, without the requisite certificate.[5]
A landscape irrigation contractor who engages in the landscape irrigation business as described in the Act without the requisite landscape irrigation contractor certificate is acting in an unlawful manner.
Even though the Act provides for monetary penalties N.J.S.A. 45:5AA-9, and for injunctive relief, N.J.S.A. 45:5AA-10, which the Board can seek, a consumer in his own defense of a lawsuit by the contractor is not precluded from demonstrating that the landscape irrigation contractor is engaging in the business in an unlawful manner by failing to hold a proper landscape irrigation certificate.
The comprehensive nature of the irrigation statute is for the protection of the customer/consumer and is remedial in nature. By its very terms and those of the regulations supporting the statute, the intent is to permit only those who have satisfied the Board of their competency in this technical field to engage in the landscape irrigation business. The burden is on the contractor to ensure that he is properly credentialed at the time the contract is entered into, not on the consumer.
Entering into a landscape irrigation contract with a homeowner without complying in every respect with N.J.S.A. 45:5AA-1 is an unlawful and unconscionable *836 business practice fully within the letter and spirit of the Consumer Fraud Act.
N.J.S.A. 56:8-2.11 of the Consumer Fraud Act provides:
Any person violating the provisions of the within Act shall be liable for a refund of all money acquired by means of any practice declared herein to be unlawful.
It is this provision that the defendant homeowner is invoking.
The facts of this case show that the irrigation system was installed, but the regulatory defects in the agreement led to the dispute. The defendant retained the services from a second contractor to remedy what he believes were defects.
There are no reported cases interpreting the refund provisions. Huffmaster v. Robinson, 221 N.J.Super. 315, 534 A.2d 435 (Law Div.1986) comes the closest in analyzing the consequences of a technical violation when the underlying contract has been fully performed. While Huffmaster is distinguishable on the facts, its analysis is appropriate. The court concluded that a contractor who violated the Consumer Fraud Act even technically would be deprived of contract enforcement capacity. In that case, the court was interpreting N.J.S.A. 56:8-19, the treble damages and attorney fees section. It found that the plaintiff, Huffmaster, was the innocent party and "(t)he Act was designed for his protection." Huffmaster, supra, 221 N.J.Super. at 322, 534 A.2d 435.
While Huffmaster was not tested in the Appellate Division, it was briefly discussed in Scibek v. Longette, 339 N.J.Super. 72, 770 A.2d 1242 (App.Div.2001). The context of that case was that the trial court found that the defendant had waived the protection of the Consumer Fraud Act. The court briefly discussed the issue of whether the violations of the act, even done "unwittingly" would trigger strict liability. In discussing Huffmaster, the court stated:
It is at least arguable that the somewhat mechanical and rigid approach adopted in Huffmaster should not be followed where the consumer has obtained the benefit of his bargain and attempts to use the Act as a sword rather than a shield. Where, for example there is no dispute as to the work authorized to be done and the agreed upon price, it seems highly unfair to deny the repairman any affirmative right to recover merely because of a technical, inadvertent violation of the act's prescriptions. Scibek, supra, 339 N.J.Super. at 82, 770 A.2d 1242.
Nevertheless, the Court declined to address that issue head on because of the facts of the case. The evidence demonstrated that the plaintiff's violation of the Act created the climate for the dispute.
In the instant matter, the defendant did not obtain the full benefit of the bargain, and there was considerable dispute as to the work authorized and completed. It was in fact those disputes that could have been avoided had the Act been complied with. In other words, the plaintiff created the climate for the dispute.
The Appellate Division, despite its concern with Huffmaster, and because the plaintiff's conduct concluded on this point as follows: "Beyond this we are concerned that the prophylactic value of the Act to deter future violation would be diminished were we to discard Huffmaster's holding under the circumstances presented." Scibek, supra, 339 N.J.Super. at 82, 770 A.2d 1242
Plaintiff in the instant case violated the Consumer Fraud Act in more than just technical ways.[6] Unlike the point made in *837 Scibek, the defendant in this case is not using the Act as a sword, but rather as a shield in his defense of a lawsuit, the underpinnings of which were the consumer fraud regulatory violations of the plaintiff.
To now permit the plaintiff to enforce the contract in the face of the unlawful regulatory violations and its failure to operate with the mandated license and recover the unpaid sums otherwise due would strip the Consumer Fraud Act of the gravitas intended by the Legislature as a remedial statute. For the reasons set forth above, the plaintiff's complaint is dismissed.
Likewise, by the contractor engaging in the business of landscape irrigation contrary to N.J.S.A. 45:5AA-1 the contractor has affirmatively undertaken an unconscionable and unlawful act within the context of N.J.S.A. 56:8-2.11 of the Consumer Fraud Act, and the defendant upon his counterclaim is entitled to a refund, which in this case is $500.
Defendant is seeking treble damages and attorney fees pursuant to N.J.S.A. 56:8-19 which provides:
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefore in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.
Clearly to obtain treble damages, the statute requires ascertainable loss. There must be a causal relationship between the ascertainable loss and the unlawful practice in order to be entitled to damages under the Consumer Fraud Act. N.J.S.A. 56:8-19, Feinberg, supra, 331 N.J.Super. at 511, 752 A.2d 720. See also Roberts v. Cowgill, 316 N.J.Super. 33, 719 A.2d 668 (App.Div.1998).
Defendant's counsel made no serious attempt to prove separate damages for the regulatory violations, and essentially conceded that point, other than to state that his client suffered the costs and attorney fees of defending himself.
Defendant suggests that the refund of the $500 awarded, pursuant to N.J.S.A. 56:8-2.11, should be trebled. There is no precedent for such relief. The refund provision is a statutory remedy, not based on the proving of any damages. The defendant is entitled to the refund regardless of whether he suffered any ascertainable loss. There is no causal relationship needed to be eligible for a refund. The refund provision, N.J.S.A. 56:8-2.11, is an additional remedy provided a consumer, and thus is not a "damage" to be trebled.
Likewise, the attorney fees expended by the defendant are not "damages" within the context of the Consumer Fraud Act and are not subject to being trebled. The remedy of treble damages and award of attorney fees are clearly independent of each other.
However, despite there having been no proven ascertainable loss, attorney fees, *838 filing fees, and costs are recoverable under N.J.S.A. 56:8-19. The Supreme Court stating: "The fundamental remedial purpose of the Act dictates that plaintiffs should be able to pursue consumer fraud actions without experiencing financial hardship." Cox, supra, 138 N.J. at 25, 647 A.2d 454.
Defendant's counsel has submitted the application for counsel fees. The court has reviewed the submissions. Counsel seeks $5,740. In awarding fees, the court is guided by the principles set forth in Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 581 A.2d 91 (App.Div.1990). Therein, Judge Skillman cautioned against a cursory review of such an application. The Chattin case involved significantly larger sums of money. In concert with that caution, the court has examined the fee request in detail. It is important in this discussion to remember that the defendant only accrued these fees as a result of the plaintiff suing him. The end result was that the plaintiff was not successful and the defendant was. The fees are reasonable. The hourly rate is $200 an hour and well within the range of hourly rates submitted to the court in other cases. His time expended is reasonable as well. The entries disclose the time, the rate, and the purpose. Therefore, the court finds $5,740 in counsel fees is reasonable.
In conclusion, the plaintiff's case is dismissed. On defendant's counterclaim, Judgment is entered against plaintiff and in favor of the defendant for $500. Defendant is awarded $5,740 in counsel fees and filing costs.
Defendant shall present an order of judgment consistent with this decision and copy opposing counsel within ten days.
NOTES
[1] During the trial and in submissions to the court, the term license is freely used. The statute, however, refers to the term "contractor certificate." The New Jersey Department of Environmental Protection issues the certificate, which it describes as a license, through its "Examination and Licensing Unit." An example of such a document was presented and admitted into evidence.
[2] As it turns out, the plaintiff installed an eight-zone Rainbird controller. The controller became an issue in the case. The defendant specifically wanted a nine-zone LXI Rainbird brand controller. Rainbird only makes an eight-zone or twelve-zone controller.
[3] In this case, the defendant has only paid the contractor $500. The contractor's suit was for the unpaid balance. The defendant's counterclaim is to receive a refund of the $500 and a dismissal of the plaintiff's claim for the unpaid balance.
[4] The contract between the plaintiff and the defendant was not sealed.
[5] Plaintiff has provided testimony, that in the past but not in this case, they have worked under someone else's license. The individual, who holds that license, testified in the present case that he has never been an employee nor does he hold an interest in the contractor's company. There is no authority for using some one else's license in the Landscape Irrigation Contractor Certification Act of 1991.
[6] "The Consumer Fraud Act makes no distinction between `technical' violations and more `substantive' ones." BMJ Insulation & Const. Inc. v. Evans, 287 N.J.Super. 513, 671 A.2d 603 (App.Div.1996).