223 N.J. Super. 520 (1988)
539 A.2d 295
LOCAL 462, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, PLAINTIFF-APPELLANT,
v.
CHARLES SCHAEFER & SONS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 1988.
Decided February 2, 1988.
*521 Before Judges MICHELS and ARNOLD M. STEIN.
Schneider, Cohen, Solomon, Leder and Montalbano, attorneys for appellant (David Grossman, of counsel and on the brief).
Gerald L. Dorf, attorney for respondent (Gerald L. Dorf, of counsel; Patrick E. Daly, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*522 Plaintiff Local 462, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union), appeals from a judgment of the Law Division that vacated two prior arbitration awards reinstating six employees of defendant Charles Schaefer & Sons, Inc. (Company), who had been terminated for violations of the parties' collective bargaining agreement.
Defendant Company and plaintiff Union were parties to a collective bargaining agreement commencing on October 13, 1982 and ending on October 12, 1985. Article XIV, Section C, Paragraph 3 of the agreement provided that unresolved grievances be submitted to arbitration in accordance with the Rules and Regulations of the New Jersey State Board of Mediation. This section also provided that "[t]he decision of the arbitrator shall be final and binding upon both Company and Union, but the arbitrator has no power to vary or alter the terms of the contract or to change the context thereof."
Article XIII of the Agreement, entitled "Probationary Period and Discharge," sets forth in Section B the types of employee conduct which "shall be cause for discharge." That section provides as follows:
B. The following shall be cause for discharge:
1. Drinking of alcoholic beverages on the premises or reporting for work intoxicated or otherwise impaired by alcohol;
2. Excessive absenteeism;
3. Two (2) garnishments or wage executions;
4. Arrest or incarceration on any charge by the police or other governmental authority;
5. Insubordination;
6. Any other violation of rules or regulations now or hereafter promulgated by the Company.
On July 24, 1984 and January 23, 1985, the Company posted notices to the employees reiterating the contractual prohibition of the use of alcohol on Company premises and reminding them that any persons "found to be in possession of or drinking alcoholic beverages while on the job or on company property *523 will be subject to immediate discharge." A similar type of notice was posted by the Company on December 4, 1984, with respect to its policy against punching the time card of another employee.
In or around January 1985, the Company suspected that several employees were engaged in theft at its Union, New Jersey plant. Consequently, the Company contracted with Wackenhut Security, Inc. (Wackenhut), an independent security firm, to provide an undercover agent to work as a regular employee in order to investigate this problem. Richard Stancil (Stancil), a Wackenhut agent, worked in the plant from January 28, 1985 through March 25, 1985. During the course of this investigation, Stancil determined that seven Union employees were violating a number of Company rules, particularly the rule prohibiting the use of alcohol on Company premises. Accordingly, as a result of Stancil's weekly reports and meetings with Company management, these seven employees were terminated by the Company effective March 29, 1985. Subsequently, each of the discharged employees received a letter from the Company advising them of the types of improper activities which had led to their dismissal.
All seven employees filed grievances regarding their discharge. When these grievances could not be resolved, the Union demanded arbitration pursuant to Article XIV of the agreement. The Union defined the arbitrable issue as follows:
Were the discharges of the seven grievants for just cause? If not, what shall be the remedy?
The Company framed the issue to be decided by the arbitrator in a somewhat different manner:
Did the Company violate Article 13 Subsection B of the collective bargaining agreement when it discharged the seven grievants? If so, what shall be the remedy?
On March 13, 1986, after a hearing, the arbitrator ordered that the discharge of six of the seven employees be modified to a disciplinary suspension. Although the arbitrator agreed that "for a very long time the overwhelming majority of bargaining *524 unit employees engaged in some of the activities indicated in the letters of discharge" (there were ten Union employees working at the plant during the investigation), he found it very significant that Company management took no immediate action to enforce the prohibition of alcohol and substance abuse and time card violations after the respective warning notices were posted. Moreover, notwithstanding the fact that the arbitrator found "[t]he violations involved in this case [to be] quite serious ...", he decided, upon review of the individual cases, that reinstatement of the six employees with disciplinary suspensions was justified because:
... the discharge of six individuals was not for just cause based on the evidence involved in this case. The activities of the grievants had been condoned for years and management never gave them a clear, convincing and unequivocal warning that what had been condoned in the past would no longer be acceptable. In fact even after the last notice (which was quite strong), life went on without any changes. This made the notice of January 23, 1985 meaningless.
In addition to modifying the sanction against the six employees to "disciplinary suspension", the arbitrator's award further provided that each of these employees "should be placed in the same status that he would have been as of [August 1, 1985 or September 1, 1985]."
After the Company refused to reinstate the six employees in accordance with the arbitration award, the Union instituted this action to confirm the award and to seek their reinstatement with back pay and other emoluments. The Company in its answer claimed that the arbitrator had exceeded his authority within the meaning of N.J.S.A. 2A:24-8d and that as such, a vacation of the award was warranted. Additionally, the Company contended by way of counterclaim that the six employees could not be returned to the same status they would have had on August 1, 1985 or September 1, 1985 because as of September 1, 1985, it would have laid them off due to overstaffing and a decline in business. The Company claimed that pursuant to Article XV, A(2), it had exercised its "right to contract with any other person" by "engag[ing] the services of an independent contractor to provide temporary part-time employees and employees *525 in different classifications as covered by the collective bargaining agreement on an as-needed basis."
Judge McGrath in the Law Division, relying upon City. Coll. of Morris Staff v. Cty. Coll. of Morris, 100 N.J. 383 (1985), held that the arbitrator had exceeded his authority by imposing a progressive disciplinary scheme upon the parties which was not contained in the collective bargaining agreement. As such, he vacated the award and remanded the matter back to arbitration. On October 17, 1986 the arbitrator issued a second opinion and award, again reinstating the six employees with disciplinary suspension. In this opinion, the arbitrator concluded that the original award was not inconsistent with Article XIIIB of the collective bargaining agreement. He stated, in part:
The Arbitrator is not attempting to impose a progressive disciplinary program on the parties. The Arbitrator did find that the grievants did engage in certain activities. But the mitigating circumstances involved in this case were of such a nature that the Arbitrator found (except in one case) that the disciplinary action taken by the Company was too severe.
In fashioning their Issues ... both parties included the question of remedy. It is a long established principle in labor arbitration that where a contract does not have specific language limiting the Arbitrator's authority to modify penalties, then inherent in the Arbitrator's authority is the right to change or modify a disciplinary action if it is found to be too severe under all of the circumstances involved in the case.
On December 5, 1986, Judge McGrath again determined that the arbitrator had exceeded his authority in ordering a disciplinary suspension and accordingly vacated the awards of March 13, 1986 and October 17, 1986. This appeal follows.
Arbitration is "`a substitution, by consent of the parties, of another tribunal for the tribunal provided by the ordinary processes of law,' and its object is `the final disposition, in a speedy, inexpensive, expeditious and perhaps less formal manner, of the controversial differences between the parties.'" Barcon Associates v. Tri-County Asphalt Corp., 86 N.J. 179, 187 (1981), citing Eastern Engineering Co. v. City of Ocean City, 11 N.J. Misc. 508, 510-511 (Sup.Ct. 1933). Thus, a submission to arbitration is essentially a contract, and the parties are bound to the extent of that contract. Mitchell v. Alfred Hofmann, *526 mann, Inc., 48 N.J. Super. 396, 405 (App.Div. 1958), certif. den. 26 N.J. 303 (1958). Because the arbitration process is not meant to be a "springboard for litigation," Barcon, 86 N.J. at 187; Chattin v. Cape May Greene, Inc., 216 N.J. Super. 618, 636 (App.Div. 1987), certif. den. 107 N.J. 148 (1987), the courts of this State have given deference to the arbitrator's decision, as "every intendment is indulged in favor of the award and it is subject to impeachment only in a clear case." Barcon, 86 N.J. at 187, citing Carpenter v. Bloomer, 54 N.J. Super. 157, 168 (App.Div. 1959). See also Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 221 (1979) ("An arbitrator's award is not to be cast aside lightly."). Accordingly, "the role of the courts in reviewing arbitration awards is extremely limited." Local 153 v. Trust Co. of New Jersey, 105 N.J. 442, 448 (1987).
The merits of an arbitration award will generally not be reviewed by the courts. See United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & G. Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). However, where, as here, an arbitration award does not draw its essence from the bargaining agreement, it will not be enforced by the courts. United Steelworkers of America v. Enterprise Corp., 363 U.S. at 597-98, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428; Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir.1969); Belardinelli v. Werner Continental, Inc., 128 N.J. Super. 1, 7 (App. Div. 1974). In Enterprise, supra, the United States Supreme Court has stated with respect to the role of the arbitrator:
When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is *527 legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. [363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428].
Thus, in Cty. Coll. of Morris, supra, our Supreme Court held that the arbitrator exceeded his authority under N.J.S.A. 2A:24-8d when he imposed a system of progressive discipline that was not provided for by the collective bargaining agreement. There, the plaintiff College staff association had a collective bargaining agreement with the College which contained the following discharge provisions:
The cause for which employees may be discharged shall include, but not be limited to [,] violation of rules, regulations and policies of the College. [Id., 100 N.J. at 387].
The agreement contained a general contractual limitation upon the arbitration proceedings similar to the limitation involved in the agreement here:
The arbitrator shall be without power or authority to add to, alter, amend or modify the terms of this Agreement ... [Ibid.]

While this agreement was in effect, plaintiff Victor Muller (Muller), an automotive maintenance mechanic, was fired for falsification of time records, insubordination, neglect of duty and College property in his care, unauthorized use of College property and attempt and threat of personal harm to his supervisor. When the parties submitted the matter to arbitration, Muller, whom the arbitrator described as "a genuine across the board transgressor" was found guilty of the first three violations. As such the arbitrator concluded in his opinion that "[g]rievant's total conduct in the normal context of his responsibilities to the Employer, merits discharge for cause." Id. at 383 (Emphasis added). Nevertheless, the arbitrator ruled that the penalty of discharge was not warranted in view of the College's failure to criticize, warn or discipline Muller before firing him. In an opinion bearing close resemblance to the one under review, the arbitrator reinstated Muller with an eight month suspension without pay.
*528 In holding that the arbitrator exceeded his authority, our Supreme Court placed great emphasis on the fact that "the arbitrator found that Muller's conduct was sufficiently improper as to merit discharge for cause ..." Id. at 392. Once the arbitrator found just cause for dismissal to exist, he could not then "read in" to the contract a system of incremental or progressive discipline where "there existed no other contract terms that would permit reduction of the penalty of discharge to one of suspension." Id. at 393. In so doing, the Supreme Court held that the arbitrator had "ignored the contractual provision that prohibited him from adding to, altering, or modifying the parties' agreement." Ibid.
It is significant to note that the Supreme Court in Cty. Coll. of Morris rejected the contention that "by waiting approximately three weeks before imposing discipline the College somehow lost its power to discharge Muller." Id. at 398. The Supreme Court summarized the "Catch-22" which this would place the employer in as follows:
... if the employer delays discharge of the employee in order to investigate the facts, the employer loses the right to discharge the wrongdoer, whereas if the employer discharges the employee on the spot, the employer runs the risk of having acted on insufficient information and thereby exposes himself to a potentially sizeable back-pay award at a later date for wrongful discharge. [Ibid.]
In light of the conclusion reached by the Court in Cty. Coll. of Morris, it is clear that the arbitrator exceeded his authority in this matter. He was not free to impose a progressive disciplinary scheme upon the parties where the contract did not so provide. Although the arbitrator did not, as in Cty. Coll. of Morris, specifically state that the grievants' conduct "merit[ed] discharge for cause" (in fact he specifically found that it did not) he did find that they had committed "quite serious" violations relating to the use of alcohol on premises which, under Article XIII B, constituted "cause" for discharge. It is clear from the record, of course, that the six employees had in fact violated a company rule which expressly stated that "drinking of alcoholic beverages on the premises shall be cause *529 for discharge." Having found that such conduct had taken place, the arbitrator could not then fashion a less severe remedy by reading the "additional ground" of progressive discipline into the contract where "there existed no other contract terms that would permit reduction of the penalty of discharge to one of suspension." Cty. Coll. of Morris, 100 N.J. at 393. Such a result ignores the clear and explicit language of the collective bargaining agreement and would leave employee discipline to the whim and caprice of the arbitrator.
Finally, we would point out that Local 153 v. Trust Co. of New Jersey, 105 N.J. 442 (1987), relied upon by the Union, is factually distinguishable and does not compel a contrary result. In Local 153, a teller who had been working at the defendant bank for 38 years negligently allowed an unknown person to cash an endorsed check for $3500 without first obtaining the express approval of a bank officer. When it was discovered that the check had been forged and was returned uncollectible, the teller was fired and the matter went to arbitration. The collective bargaining agreement did not explicitly address whether conduct of this nature would constitute just cause for dismissal.
At the hearing the arbitrator took into account the employees long and spotless service record, as well as her offer to pay back the money, and concluded that her discharge was not supported by just cause. Accordingly, although the arbitrator acknowledged that the teller "had committed a serious error," he nevertheless ordered her reinstatement with a 14-week suspension and a requirement that she reimburse the bank $3500. As in the case at bar, the collective bargaining agreement in Local 153 contained the standard clause that "`the arbitrator may not change, modify, alter, substitute, add to, or subtract from the provisions of this Agreement.'" Id. at 451. However, as the Supreme Court noted:
[t]here is nothing in the ... agreement that limits the arbitrator to a choice between termination and reinstatement. The contract is virtually silent with respect to the arbitrator's power to fashion remedies. [Ibid.]
*530 Accordingly, the Court distinguished Cty. Coll. of Morris on the following grounds:
In that case the arbitrator expressly found that there was just cause to terminate the employee, but concluded that the contract should be construed to require a less severe form of discipline because the employee had received no warning that his employment was in jeopardy ... Here, the arbitrator, having determined that the Bank lacked just and sufficient cause to fire its employee, was authorized to fashion an appropriate remedy. [Local 153, 105 N.J. at 451. (Emphasis added)].
Here, of course, the collective bargaining agreement specifically provided that drinking of alcoholic beverages on the premises "shall be cause for discharge." Moreover, unlike the situation in Local 153, the Company had posted notices to the employees on July 24, 1984 and again on January 23, 1985 reiterating the contractual prohibition against the use of alcohol on Company premises and reminding them that any person found in possession of or drinking alcoholic beverages on the job or on Company property would be subject to immediate discharge. It was shortly after the last notice was posted that an undercover investigator ascertained that the six employees had violated Company rules prohibiting the use of alcohol on Company premises. Those six employees were terminated effective March 29, 1985. In the circumstances, the arbitrator's decision to bar their termination for cause does not draw its essence from the collective bargaining agreement and, therefore, the award will not be enforced.
Accordingly, the order of the Law Division under review is affirmed. In view of our decision, we need not address the Company's claim that the six employees could not be returned to the same status that they would have had as of August 1, 1985 or September 1, 1985 because of an inevitable lay-off due to overstaffing and a decline in business, nor do we decide whether the Company legitimately exercised its "right to contract with any other person" by engaging the services of an independent contractor to provide temporary employees as part-time substitutes for the ostensibly laid-off six employees involved in this matter.