703 A.2d 961

ALAMO RENT A CAR, INC., PLAINTIFF-APPELLANT,
v. BETZAIDA GALARZA,[1], DEFENDANT-
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1997—Decided December 8, 1997.

---

[1] Betzaida Galarza was improperly designated as Betzaid Galarza.

Before Judges LONG, STERN and KIMMELMAN.

*John K. Bennett* argued the cause for appellant (*Carpenter, Bennett & Morrissey,* and *Stokes & Murphy,* attorneys; *Mr. Bennett, Arch Stokes,* and *Christopher Terrell,* of counsel; *Mr. Stokes* and *Mr. Terrell,* on the brief).

*Donald D. Vanarelli,* argued the cause for respondent.

*D'Andre Workman,* Deputy Attorney General, argued the cause for amicus curiae, New Jersey Division on Civil Rights (*Peter Verniero,* Attorney General, attorney; *Jeffrey C. Burstein,* Deputy Attorney General, of counsel; *Mr. Workman,* on the brief).

The opinion of the court was delivered by

LONG, P.J.A.D.

In April, 1991, plaintiff Alamo Rent A Car, Inc. ("Alamo"), hired defendant Betzaida Galarza as a rental agent at its Newark, New Jersey facility. In September 1993, Galarza signed Alamo's standardized employment manual known as the Family Member Pact or the "FamPact." The FamPact outlined the terms and conditions of the employment relationship and was signed by both Galarza and an Alamo representative.

Specifically, in a paragraph entitled "My Bill of Rights," the FamPact enumerated fifteen employee rights including "the right to be free from discrimination" and "the right to be free from harassment." Further the FamPact provided:

ARBITRATION. If I claim that Alamo has violated this FamPact, I agree that the dispute shall be submitted to and resolved through binding arbitration administered by the American Arbitration Association. "Arbitration" means the settlement of a dispute by one or more persons who are chosen to hear both sides and then come to a decision.

The FamPact concluded with the following "Summary & Agreement":

I have read this FamPact, and promise and agree to:

abide by all its terms and conditions; accept my pay and benefits, including the benefits of FamPact.

Alamo has written this FamPact, and promises and agrees to:

abide by all its terms and conditions; provide me competitive pay and benefits, including the benefits of FamPact.

Alamo and I acknowledge and understand the special relationship created between us by this FamPact. It is our entire agreement of employment. Alamo's employing me under the terms and conditions of this FamPact, and my working under its terms and conditions, support this agreement.

On September 14, 1994, Alamo terminated its employment relationship with Galarza because of her "poor work performance."

In October 1994, Galarza filed a complaint with the New Jersey Division on Civil Rights (the "Division") alleging that Alamo had violated the Law Against Discrimination ("LAD"), *N.J.S.A.* 10:5-1 to -42, in its dealings with her. She also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") which ceded jurisdiction to the Division. Galarza's case was transmitted to the Office of Administrative Law ("OAL").

In June 1996, while the administrative action was pending, Alamo, invoking the FamPact filed a verified complaint in the Law Division, seeking to compel Galarza to arbitrate her claim that Alamo violated LAD. Galarza was ordered to show cause why her claim should not be arbitrated. The trial judge ultimately ruled that Galarza did not have to submit her LAD claim to arbitration and dismissed Alamo's complaint. He stated:

> In New Jersey, on the other hand, the Law Against Discrimination (LAD), *N.J.S.A.* 10:5[ ]–1 *et seq.* governs the facts of this case. It applies to discriminatory practices and not necessarily to terms of employment. Our state has compelling responsibility and statutory mandate to protect and make known that protection for citizens who may be subjected to the various forms of proscribed discrimination. There is a strong and distinct public interest in enforcement of LAD and that statutory procedure. Among other things, the agency has more responsibility and remedial powers than an arbitrator.

Relying on *Thornton v. Potamkin Chevrolet,* 94 *N.J.* 1, 5, 462 *A.*2d 133 (1983) and *Gallo v. Salesian Soc'y, Inc.,* 290 *N.J.Super.* 616, 676 *A.*2d 580 (App.Div.1996), the judge determined that, notwithstanding the arbitration clause found in the employment agreement, "[t]he acknowledged public interest in this State would indicate the primacy of administrative over arbitration adjudications."

Alamo appeals, contending that Galarza's LAD claim is subject to arbitration under her contract of employment pursuant to *N.J.S.A.* 2A:24–3. Galarza counters that the Division is the exclusive forum for the resolution of LAD claims. At oral argument, the Attorney General, appearing as amicus curiae on behalf of the Division struck a middle ground, arguing that an employee may choose to waive his or her statutory remedies in favor of arbitration but that such a waiver may only be found where the circumstances surrounding the signing of the agreement clearly indicate that the waiver was knowing and voluntary. According to the Attorney General, no such showing was made here.

The case presents two questions. The first is whether an employee may agree to arbitrate statutory claims under LAD. The answer to this question is "yes." The second is whether Galarza entered into such a binding arbitration agreement, thereby waiving statutory remedies. The answer to this question is "no." As a result, we affirm the trial judge's ruling that Galarza can pursue her statutory remedies before the Division notwithstanding the arbitration clause in the FamPact. We do not approve his reasoning however, which we interpret as suggesting that an employee has the absolute right to chose statutory remedies regardless of a contract to the contrary.

## I

■■■ We begin our analysis with a recognition of the strong public policy in our state favoring arbitration as a means of dispute resolution and requiring a liberal construction of contracts in favor of arbitration. *Marchak v. Claridge Commons, Inc.*, 134 *N.J.* 275, 281, 633 *A.*2d 531 (1993); *Young v. Prudential Ins. Co. of America, Inc.*, 297 *N.J.Super.* 605, 617, 688 *A.*2d 1069 (App. Div.), *certif. denied*, 149 *N.J.* 408, 694 *A.*2d 193 (1997); *Singer v. Commodities Corp.*, 292 *N.J.Super.* 391, 401, 678 *A.*2d 1165 (App. Div.1996). The fact that what is at issue is a statutory remedy does not, in itself, affect the favored status accorded to arbitration. Indeed the "propriety of contractual waiver of statutory rights is well-established." *Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.*, 78 *N.J.* 122, 140, 393 *A.*2d 267 (1978). Only if a statute or its legislative history evidences an intention to preclude alternate forms of dispute resolution, will arbitration be an unenforceable option. *Young, supra,* 297 *N.J.Super.* at 616, 688 *A.*2d 1069 (citing *Gilmer v. Interstate/Johnson Lane Corp.* 500 *U.S.* 20, 29, 111 *S.Ct.* 1647, 1653–54, 114 *L.Ed.*2d 26, 39 (1991)). There is no indication in the text or legislative history of LAD that members of the classes protected by that statute cannot waive the statutory process and agree to arbitrate the dispute. *Young, supra,* 297 *N.J.Super.* at 616, 688 *A.*2d 1069. Further, there is nothing in the Arbitration Act, *N.J.S.A.* 2A:24–3, restricting the type of agreement subject to arbitration. In short, it seems clear to us that an employee may, by contract, give up his or her right to pursue a statutory LAD remedy in favor of arbitration. *Gilmer, supra; Young, supra.*

Nothing in *Thornton* or *Gallo* supports the proposition advanced by the trial judge and Galarza that the public policy of this state allows a litigant to choose the administrative remedy in all circumstances. *Thornton* is an entire controversy case which holds only that the entire controversy doctrine's policy against the fractionalizing of litigation does not preclude an employee from filing a discrimination claim in the Division where that claim had

been withheld from an earlier arbitration proceeding. *Thornton, supra,* 94 *N.J.* at 3, 462 *A.*2d 133. *Thornton* does not even obliquely address the issue of whether an employee may knowingly and voluntarily contract away his or her statutory rights in favor of arbitration.

*Gallo,* likewise, only resolved the issue of whether the mere existence of a general contractual grievance procedure bars the filing of a discrimination claim in the Division. *Gallo, supra,* 290 *N.J.Super.* at 656, 676 *A.*2d 580. *See also Dixon v. Rutgers, The State University of New Jersey,* 110 *N.J.* 432, 459, 541 *A.*2d 1046 (1988) (the existence of contractual grievance procedures does not deprive one of separate statutory rights under LAD). Nothing in *Gallo* can be read as addressing the question of whether an employee may enter into a clear and unequivocal agreement to waive his or her statutory remedies for discrimination. The most that can be said of the holdings in these cases, despite their occasional use of some rather expansive language, is that, in a case which does not involve a clear and unequivocal waiver of statutory rights, the employee is free to chose among statutory and other contractual remedies.

That this is a correct reading of *Thornton* and *Gallo* is underscored by the Division's position in this case: that it is not the exclusive forum for a LAD claim where an employee waives his or her statutory rights in favor of arbitration. This interpretation by the Division of its own jurisdiction is entitled to our deference. *Brady v. Dep't of Personnel,* 149 *N.J.* 244, 256, 693 *A.*2d 466 (1997); *Desilets on Behalf of Desilets v. Clearview Reg'l Bd. of Educ.,* 137 *N.J.* 585, 595, 647 *A.*2d 150 (1994). We conclude that an employee may knowingly and voluntarily waive statutory remedies in favor of arbitration and be bound by that agreement.

## II

The remaining question is whether, by the arbitration clause in the Alamo employment agreement, Galarza in fact agreed to submit her LAD claims to arbitration. In interpreting

an arbitration clause, we rely upon basic contract principles. *Singer, supra,* 292 *N.J.Super.* at 402, 678 *A.*2d 1165.

> A "submission to arbitration is essentially a contract, and the parties are bound to the extent of that contract." *Local 462, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. C. Schaefer & Sons, Inc.,* 223 *N.J.Super.* 520, 525, 539 *A.*2d 295 (App.Div.1988); *see also Mitchell v. Alfred Hofmann, Inc.,* 48 *N.J.Super.* 396, 405, 137 *A.*2d 569 (App.Div.), *certif. denied,* 26 *N.J.* 303, 139 *A.*2d 589 (1958); *Andrews v. Allstate Ins. Co.,* 280 *N.J.Super.* 198, 203, 654 *A.*2d 1039 (Law Div.1994). Our courts generally recognize their obligation to "enforce contracts as made by the parties." *Vasquez v. Glassboro Serv. Ass'n Inc.,* 83 *N.J.* 86, 101, 415 *A.*2d 1156 (1980); *see also Marchak, supra,* 134 *N.J.* at 281, 633 *A.*2d 531. Moreover, our Supreme Court has held that "[w]hen reading a contract, our goal is to discover the intention of the parties." *Marchak, supra,* 134 *N.J.* at 282, 633 *A.*2d 531. Generally, courts "consider the contractual terms, the surrounding circumstances, and the purpose of the contract." *Ibid; see also Jacobs v. Great Pac. Century Corp.,* 104 *N.J.* 580, 586, 518 *A.*2d 223 (1986); *Nitta v. Joe Mitsuo Yamamoto,* 31 *N.J.Super.* 578, 580, 107 *A.*2d 515 (App.Div.1954).
>
> However, our courts have also warned against rewriting "a contract to broaden the scope of arbitration ... [because] parties may agree to shape and limit the scope of arbitration in their contract." *Yale Materials, supra,* 240 *N.J.Super.* at 374, 573 *A.*2d 484; *see also Cohen v. Allstate Ins. Co., supra* 231 *N.J.Super.* at 101, 555 *A.*2d 21; *Moreira Constr. Co., Inc. [v. Wayne Tp.],* 98 *N.J.Super.* [570] 576, 238 *A.*2d 185 [(1968)]. In *Marchak, supra,* 134 *N.J.* at 282, 633 *A.*2d 531, our Supreme Court observed that "[a] clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Thus, "[i]n the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute. Subsumed in this principle is the proposition that only those issues may be arbitrated which the parties have agreed shall be." *Grover v. Universal Underwriters Ins. Co., supra,* 80 *N.J.* at 228–29, 403 *A.*2d 448.
>
> [*Singer, supra,* 292 *N.J.Super.* at 402, 678 *A.*2d 1165.]

An agreement to waive statutory remedies must "be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively." *Red Bank Reg'l Educ. Ass'n, supra,* 78 *N.J.* at 140, 393 *A.*2d 267.

Here, the FamPact generally guaranteed that employees would be free from discrimination and free from harassment. Its arbitration clause states:

> Arbitration. If I claim that Alamo has violated this FamPact, I agree that the dispute shall be submitted to and resolved through binding arbitration administered by the American Arbitration Association.

In our view, this clause is inadequate to constitute a waiver of statutory remedies. The most that can be said of it is that it mandates that if Galarza claims the FamPact was violated, the dispute must go to arbitration. It does not suggest, let alone mandate, that claims arising other than out of the FamPact must also be resolved in that forum. That is what distinguishes this clause from the arbitration clauses we enforced in *Singer, supra* and *Young, supra.*

In *Singer,* plaintiff, a securities trader, brought suit against his employer for wrongfully terminating him in violation of the Conscientious Employee Protection Act ("CEPA") and for defaming him in a report to the National Association of Securities Dealers ("NASD"). Singer signed an agreement which stated "I agree to arbitrate *any* dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10." *Singer, supra,* 292 *N.J.Super.* at 396, 678 *A.*2d 1165. (emphasis added). It was undisputed that Item 10 incorporated the NASD code which, "as amended in 1993, explicitly provided that disputes arising out of the employment or termination of employment of an associated person with a member should be submitted to arbitration." *Id.* at 407, 678 *A.*2d 1165.

We held that:

> The language of the October 1, 1993, amendment to the NASD Code was clear and unambiguous and should have been enforced as written. We find that compelling arbitration under these circumstances is neither unfair nor inequitable and does not deprive plaintiff of any fundamental or substantive rights.
>
> [*Ibid.* ]

*Young* is veritably identical to *Singer.* Young, a securities trader, sued his employer for CEPA and LAD violations. He alleged he was terminated in retaliation for reporting illegal insurance sales practices in violation of CEPA and that he suffered psychological injuries which qualified him as "handicapped" under LAD. *Young, supra,* 297 *N.J.Super.* at 610, 688 *A.*2d 1069.

We held Young was subject to arbitration of his LAD claim[2] because he had agreed to arbitrate "*any* dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws with which I register, as indicated in Question 8." *Id.* at 613, 688 *A.*2d 1069. (emphasis added). The NASD code to which this section refers specifically requires arbitration of "any" dispute, claim or controversy "arising out of the employment or termination of employment" of persons of Young's status. *Id.* at 614, 688 *A.*2d 1069. We held Young to be bound by this clear and unequivocal agreement. *Id.* at 621, 688 *A.*2d 1069. *See also Bleumer v. Parkway Ins. Co.*, 277 *N.J.Super.* 378, 403–404, 649 *A.*2d 913 (Law Div.1994) (finding plaintiff's CEPA claims were subject to compulsory arbitration since the arbitration clause, requiring arbitration of "any dispute," was so broadly worded it contemplated the inclusion of statutory remedies within its sweep.)

The broad language of the arbitration clauses in *Singer* and *Young* is absent here. Galarza did not agree to submit "any" dispute, claim or controversy arising out of her employment with Alamo to arbitration. What she agreed to was that if she believed Alamo violated the FamPact, the dispute would be submitted to arbitration. While it is true that the FamPact generally guaranteed Galarza the right to be free from discrimination and harassment, the allegation of her complaint was not that Alamo violated the FamPact but that it violated the LAD. Her complaint alleged that:

> The above named Respondents are hereby charged with unlawful discrimination with respect to the terms and conditions of Complainant's employment because of Race, Creed, Color, National Origin, Ancestry, Age, *Sex, Affectional or Sexual Orientation*, Marital Status, *Physical Handicap*, Armed Forces liability, Reprisal in violation of *N.J.S.A.* 10:5–4.1 and 10:5–12(a), ( ), ( ) of the New Jersey law Against Discrimination ("NJLAD").

---

[2] The CEPA claim was not subject to arbitration because of a specific exception in the contract involving the business of insurance. *Young, supra,* 297 *N.J.Super.* at 621–624, 688 *A.*2d 1069. That exception is not relevant here.

She went on to claim that Alamo discriminated against her because she is Hispanic; because she suffers from the physical disability of mitrovalve prolapse; because she is a female and because she was "erroneously perceived" to be homosexual. She alleged, as well, that she was sexually harassed at Alamo. She sought compensatory damages not only for economic loss but for humiliation, mental pain and suffering. *See Hernandez v. Region Nine Housing Corp.*, 146 *N.J.* 645, 684 *A.*2d 1385 (1996) (finding that the Division under LAD not only has the power to enjoin further discriminatory practices by employer, but can award compensatory damages as well as damages for pain and suffering or personal humiliation.) No reading of the Alamo arbitration clause clearly and unmistakably establishes that Galarza waived her right to pursue her LAD claim.

By its very terms, the Alamo arbitration clause applies only to disputes under the Fampact not controversies arising under the LAD. If Alamo wanted to enter into a contract to bind Galarza to arbitration under all circumstances, it should have written an inclusive arbitration clause. This is not a difficult chore. For example, in *Singer* and *Young* we enforced arbitration of CEPA and LAD violations where the employee had agreed to submit "any dispute" regarding the employment agreement to arbitration.

The "any dispute" language is the very least an employer needs to utilize in order to guarantee arbitration of all disputes. The better course would be the use of language reflecting that the employee, in fact, knows that other options such as federal and state administrative remedies and judicial remedies exist; that the employee also knows that by signing the contract, those remedies are forever precluded; and that, regardless of the nature of the employee's complaint, he or she knows that it can only be resolved by arbitration.

The Alamo arbitration clause does not approach the "any dispute" language we have previously held as minimally sufficient to compel arbitration, let alone the kind of language which we view as more fully ensuring that a waiver of statutory remedies is

indeed knowing and voluntarily. On its face, it is simply inadequate to require arbitration of any issue other than a Fampact violation. Thus, we affirm the trial judge's ruling that Galarza may proceed with her LAD claim.

Affirmed.