916 A.2d 475 (2007)
390 N.J. Super. 543
Virginia and David BLOCK, Plaintiffs-Respondents,
v.
James PLOSIA, Individually, and t/a J. Plosia Construction and Plosia Construction Co., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 13, 2006.
Decided February 23, 2007.
*476 Apruzzese, McDermott, Mastro & Murphy, attorneys for appellant (James L. Plosia, Jr., Liberty Corner, of counsel and on the brief).
Wolff & Samson, attorneys for respondent (Joseph A. Dickson and Melissa A. Salimbene, West Orange, on the brief).
Before Judges COLLESTER, LYONS and SABATINO.
The opinion of the court was delivered by
SABATINO, J.S.C. (temporarily assigned).
This case raises a novel question under the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enacted in 2003 ("the Arbitration Act"). The question is whether an arbitrator retained pursuant to the parties' written agreement to "submit all matters in difference between them" to arbitration had the authority under the Arbitration Act to award statutory treble damages and counsel fees, in circumstances in which the advance statement of issues submitted by the parties to the arbitrator made no reference to statutory claims nor contained any demands for treble damages or statutory fees.
We hold that, in the absence of indicia that all parties to the arbitration have reasonable advance notice that the scope of the arbitration includes potential liability for treble damages and counsel fees, an arbitrator may not impose such extraordinary relief in the award.

I.
The pertinent facts are as follows. Plaintiffs Virginia and Daniel Block own a home in Upper Montclair. In late 2003 or early 2004, the Blocks hired an architect to prepare blueprints and specifications for an addition to their residence. After the architect completed those plans, the Blocks solicited bids from home contractors to perform the work. They selected from those bids defendant James Plosia, a sole proprietor in East Rutherford with a construction business trading at times as "J. Plosia Construction" and "Plosia Construction Co." Plosia had been favorably recommended to the Blocks.
In August 2004, the Blocks and Plosia entered into a written agreement for the construction on the Blocks' residential addition. The contract price was $64,000. The agreement was prepared by Plosia in the form of a contractor's invoice. The agreement briefly indicated the scope of the work in nine one-line summaries. The *477 agreement did not detail the principal products and materials to be used in the construction. Nor did it refer to the architect's plans or contain any time frames for when their work would commence or was expected to be completed. However, Plosia apparently made an oral representation to the Blocks that the work would be finished in about two months or early November 2004.
After the construction contract was signed, the Blocks paid Plosia a $4,000 deposit. Thereafter the Blocks paid Plosia weekly installments of $10,000 each, eventually remitting $60,000 of the agreed-upon $64,000 contract price.
The construction did not progress to the Blocks' satisfaction, and remained incomplete through December 2004. Plosia was not present when the local building inspector attempted to inspect the framing in early December 2004. The inspection was rescheduled for early January 2005, at which time the inspector determined that Plosia had not built the space above the garage in a manner consistent with the architect's plans. This deviation required the Blocks to rehire the architect, who prepared "as built" plans to satisfy the building inspector. Another framing inspection was scheduled.
At the end of December 2004, Plosia requested the Blocks to pay the remaining $4,000 due on the contract price. At the same time, Plosia allegedly promised the Blocks that he would finish all of the work in a prompt and satisfactory manner after the last framing inspection on February 16, 2005. The Blocks did not pay the $4,000 sum,[1] and became increasingly dissatisfied with Plosia's work. They complained of unworkmanlike construction, particularly in the garage area and on the addition's deck. They also noted that the garage roof leaked, causing water to seep into the garage throughout the construction.
Ultimately, on May 4, 2005, the Blocks discharged Plosia. They hired other contractors to complete the work, causing them to expend substantial funds. The Blocks sought recourse from Plosia, who disputed their complaints.
The parties agreed to submit their dispute to binding arbitration. They jointly selected a retired judge to serve as the arbitrator. Following the selection of the arbitrator, the parties signed an arbitration agreement, consisting of ten numbered provisions. Because the provisions of that agreement are important to our analysis and are relatively brief, we quote them here in full:[2]
1. The parties do mutually agree to submit all matters in difference between them to the award and final determination of [an] Arbitrator selected by them.
2. The parties do agree that they will abide by and perform the award and determination of the Arbitrator, which shall be in writing and signed by the Arbitrator.
3. At least 14 days prior to the Arbitration Hearing the parties shall submit to the Arbitrator, with a copy to each other, a limited statement of issues which each party shall present to the Arbitrator during the hearing, together with any documents or other writings that will be used at the hearing.

*478 4. The parties do further agree that the award of the Arbitrator shall be binding and judgment on such award may be entered in any court of competent jurisdiction.
5. (a) During the hearing the Rules of Evidence shall not strictly apply but shall be a guide for the Arbitrator in ruling on the admissibility of any documents or evidence. The Arbitrator shall accept all documents and admit all testimony he finds reasonably reliable.
(b) At the Hearing, questions may be directed to any party or witness. Each party shall have the right to cross-examine the other party's witnesses.
(c) While the Rules of Evidence are not applicable, all privileges contained in the Rules of Evidence are applicable unless otherwise waived. All waiver of privileges must be in writing and executed by a party's counsel.
(d) The Arbitration Hearing shall continue on a day-by-day basis until concluded.
6. The Arbitrator shall make a written decision setting forth the computation of damages if it finds that any party is entitled to monetary damages.
7. The Arbitrator has the authority to compel either party to produce any documents in the possession of that party which the Arbitrator deems discoverable.
8. Each party shall be responsible for its own costs and expenses of the Arbitration, and the costs and fees of the Arbitrator shall be borne equally by the parties.
9. There is no requirement that the proceedings be recorded by a certified shorthand reporter. Either party at that party's own cost and expense, may, however, have a certified shorthand reporter in attendance at the hearing.
10. The decision of the arbitrator shall be final and shall not be vacated unless a party carries its burden of proof in establishing grounds to vacate the award in accordance with N.J.S.A. 2A:23B-23 and/or there is a modification or correction of the award by the Court pursuant to N.J.S.A. 2A:23B-24.
The record is not clear as to the identity of the drafter of the arbitration agreement. In any event, it is uncontroverted that the parties agreed to be bound by it. Nor is there a claim that the agreement was produced through coercion or that it contains adhesive terms. Neither party was represented by an attorney in the arbitration.
Pursuant to paragraph 3 of the arbitration agreement, calling for the advance submission of a limited statement of issues, the Blocks provided to the arbitrator a three-page typewritten memorandum detailing their version of the facts and their problems with Plosia's work. They began that memorandum of issues with the following statement:
The purpose of this hearing is for us [the Blocks] to reclaim costs incurred to date to remedy and partially complete construction by James Plosia; and for damages to our property.
Attached to the Blocks' memorandum was a tabulated summary of [c]osts incurred to date to remedy non-compliant work and complete [the] construction project to a compromised but usable condition[.] (emphasis omitted). The summary of those claimed costs totalled $40,227.90, inclusive of $2,169.60 in fees the Blocks had expended for an attorney during the course of their dispute with Plosia. *479
The Blocks' limited statement of issues was supplied to the arbitrator and to Plosia in advance of the arbitration. Plosia opted not to submit any statement of issues on his own behalf.
The arbitration took place on November 15, 2005, at which time the arbitrator received sworn testimony[3] from David Block and James Plosia. The arbitrator also considered various documentary exhibits and photographs.
On January 3, 2006, the arbitrator issued a five-page letter opinion. Among other things, the arbitrator found that Plosia had breached his contractual obligations to the Blocks through untimely, incomplete and unworkmanlike performance of the construction. In the course of his analysis, the arbitrator also determined that Plosia had violated numerous regulatory provisions governing home construction, as set forth at N.J.A.C. 13:45A-16.2.[4] The arbitrator further determined that Plosia's deficient actions and inactions amounted to unlawful practices, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2; see also Cox v. Sears Roebuck Co., 138 N.J. 2, 647 A.2d 454 (1994).
As to remedy, the arbitrator accepted most, but not all, of the Blocks' claimed expenses. He awarded them $28,382.91 for past incurred costs, plus another $3,075.00 for estimated future expenses, totalling $31,457.91. The arbitrator then tripled those damages, pursuant to the Consumer Fraud Act, see N.J.S.A. 56:8-19, thereby calculating the total award at $94,373.73. He entered an award in that amount in favor of the Blocks, noting that [a]ny and all other claims that may have been brought by either party to [the] proceeding which has not been determined . . . shall be dismissed as being unproven.
In February 2006 the Blocks filed a verified complaint in the Law Division seeking to confirm the arbitration award. They included with their motion papers, the arbitration agreement, the arbitrator's decision, and other related documents.
Plosia cross-moved to vacate the award. He argued that the arbitrator exceeded his authority in imposing remedies under the Consumer Fraud Act because the parties never agreed to include consumer fraud claims within the scope of the arbitration.
Plosia noted that the sole relief sought by the Blocks in their arbitration statement consisted of damages for breach of contract, tabulated at approximately $40,000. Had he been aware that he faced liability for statutory treble damages far in excess of that sum, Plosia contends that he might have approached the arbitration differently. For example, he might have hired counsel or more seriously attempted to settle the dispute.
Secondary to his scope arguments, Plosia also contended that the arbitrator miscalculated the Consumer Fraud Act damages. Specifically, he pointed out that the arbitrator improperly trebled the Blocks' *480 counsel fees of $2,169.60, and that the statutory trebling should only be applied to the base award of $29,288.31.
After considering the parties' competing positions and the oral arguments of counsel, the Law Division judge found that the arbitrator was justified in applying the Consumer Fraud Act to the Blocks' claims. The judge noted that "[t]he issues identified by the plaintiff sound in breach of contract and acts that are contemplated by the New Jersey Consumer Fraud Act." She added that "[t]here is nothing before this court where the parties waive their rights to arbitration of the applicability of the Consumer Fraud Act."
However, the judge did agree that the arbitrator had incorrectly trebled the Blocks' counsel fees. See Artistic Lawn & Landscape Co. v. Smith, 381 N.J.Super. 75, 89, 884 A.2d 828 (Law Div.2005)(holding that the statutory remedies of treble damages and attorneys fees are "clearly independent of each other"). Consequently, the judge modified the award to $87,864.93, plus counsel fees of $2,169.60 as of the date that the Blocks submitted costs to the arbitrator. The judge also permitted the Blocks to submit a supplemental fee certification for legal services provided to them after the arbitration in seeking enforcement of the award. The Blocks accepted that invitation and submitted a supplemental application for an additional $13,730.22 in fees, subsequently amended to $13,001.88. The judge denied that request without prejudice, pending this appeal.
Plosia appealed the judge's ruling. He contends that the arbitrator's decision awarding Consumer Fraud Act remedies ought to be vacated, or, at the very least, modified to delete treble damages and counsel fees. Plosia does not challenge, however, the $29,283.81 in contract damages fixed by the arbitrator.[5] The Blocks do not cross-appeal the judge's slight modification of the award, but maintain their right to enhance the award with supplemental, post-arbitration counsel fees.
With that backdrop, we now examine the novel issue before us.

II.
The parties agree that the 2003 Arbitration Act, N.J.S.A. 2A:23B-1 to -32, applies to this matter. The statute is a modified version of the Uniform Arbitration Act of 2000 promulgated by the National Conference of Commissioners on Uniform State Laws. The statute continues our state's long-standing policy to favor voluntary arbitration as a means of dispute resolution. See, e.g., Kimm v. Blisset, LLC, 388 N.J.Super. 14, 28-32, 905 A.2d 887 (App.Div.2006); Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 389, 703 A.2d 961 (App.Div.1997).
The judicial power to set aside an arbitration award is limited. See, e.g., Tretina Printing, Inc. v. Fitzpatrick & Assoc., Inc., 135 N.J. 349, 356-57, 640 A.2d 788 (1994). Nonetheless, the Arbitration Act identifies several grounds upon which an arbitration award may be vacated, including instances where "the arbitrator exceeded [his or her] powers," see N.J.S.A. 2A:23B-23(a)(4), and certain instances where "there was no agreement to arbitrate." See N.J.S.A. 2A:23B-23(a)(5). Short of vacature, an arbitration award may be modified if "the arbitrator made an award on a claim not submitted to the arbitrator and the award may be corrected *481 without affecting the merits of the decision upon the claims submitted[.]" N.J.S.A. 2A:23B-24(a)(2).
The core question here is whether the consumer fraud issues implicated by Plosia's construction work were properly "submitted to the arbitrator," ibid., in a manner that afforded fair notice to Plosia before the arbitration took place. Such notice is vital as a matter of fundamental fairness. See State v. Tropea, 78 N.J. 309, 316, 394 A.2d 355 (1978)(recognizing that state-sanctioned proceedings conducted pursuant to statute must comport with norms of fundamental fairness). In that same vein, the Arbitration Act itself requires that the party initiating an arbitration provide all other parties with notice of the proceeding in a manner "that is reasonably necessary to inform the[m] . . . in [the] ordinary course." N.J.S.A. 2A:23B-2(a) (emphasis added). Additionally, the statute empowers arbitrators to conduct their proceedings "in such manner as the arbitrator considers appropriate for a fair and expeditious disposition[.]" N.J.S.A. 2A:23B-15(a)(emphasis added).
As support for their position that the arbitrator here did not exceed his powers or act unfairly in applying the Consumer Fraud Act, the Blocks largely rely upon Caruso v. Ravenswood Developers, Inc., 337 N.J.Super. 499, 767 A.2d 979 (App.Div. 2001). In Caruso we considered a home construction contract with a provision mandating that "[a]ny dispute arising in connection with [the contract] . . . shall be heard and determined by arbitration," subject to the home buyer's express right to pursue specific performance if the seller wrongfully refused to close title. Id. at 502, 767 A.2d 979. After such a dispute arose, the buyer filed a complaint in the Superior Court alleging, among other things, that the sellers violated the Consumer Fraud Act and had engaged in a pattern of racketeering activity contrary to the New Jersey RICO statute, N.J.S.A. 2C:41-1 to -6.2. Both statutes exposed the defendants to multiple damages and counsel fees. The trial judge referred the consumer fraud and RICO claims to arbitration over the objection of the defendants.
The defendants in Caruso argued that the consumer fraud and RICO claims should have been resolved in the Superior Court because they never specifically agreed in the contract to arbitrate such claims. Caruso, supra, 337 N.J.Super. at 503, 767 A.2d 979. They also contended that such statutory claims are incompatible with the arbitration process. Id. at 504, 767 A.2d 979. We rejected those contentions. We found that nothing in the Consumer Fraud Act or the RICO statute indicates that such claims are not amenable to arbitration. Id. at 505, 767 A.2d 979. We further held that the consumer fraud and RICO claims were implicitly subsumed within the parties broadly-worded arbitration agreement. Id. at 508, 767 A.2d 979. Consequently, we sustained the trial judge's referral of the statutory claims to arbitration.
In the present case, the parties' arbitration agreement is likewise broadly worded, providing in its first paragraph that "all matters in difference between them" would be finally determined by the arbitrator. However, the chronology here is quite different than in Caruso. The Blocks never filed a court pleading or any arbitration statement notifying Plosia that they were invoking the Consumer Fraud Act and its remedies of treble damages and fee-shifting. Nor did the Blocks set forth the various consumer regulations which Plosia was ultimately found by the arbitrator to have violated, infractions that comprise unfair practices triggering the special remedies of the Consumer Fraud Act. The very first time that Plosia learned *482 of his exposure in that regard was through the arbitrator's written decision.
N.J.S.A. 2A:23B-9, a provision that did not exist when we decided Caruso, requires that written notice of an arbitration hearing "shall describe the nature of the controversy and the remedy sought." Id. Although arbitration is designed to be a faster and less formal means of dispute resolution, the written notice required by N.J.S.A. 2A:23B-9 serves as the functional equivalent of notice pleading in a court action. Cf. R. 4:5-2; Pressler, Current N.J. Court Rules, Comment 1 on R. 4:5-2 (2007)("it is fundamental that the pleading must fairly apprise the adverse party of the claims and issues raised").
The limited statement of issues submitted by the Blocks to the arbitrator fell short of that mark, at least with respect to the Consumer Fraud Act and its associated enhanced remedy of treble damages. The statement expressly indicated that, as far as the Blocks were concerned, "[t]he purpose of the hearing is for us to reclaim costs incurred to date to remedy and partially complete construction by James Plosia, and for damages to our property." Such make-whole costs are within the ambit of traditional compensatory damages for breach of contract. Furst v. Einstein Moomjy Inc., 182 N.J. 1, 13, 860 A.2d 435 (2004). The itemized list of damages that the Blocks appended to their statement made no mention of the possibility of statutory trebling.
In light of this chronology, Plosia had a reasonable basis to regard his exposure in the arbitration as being no more than the $40,227.90 sum that was claimed in the Blocks' arbitration submission. We therefore perceive merit in Plosia's contention that he would have hired a lawyer, or otherwise would have approached the arbitration differently, had he been on notice of a treble damages claim. It is reasonable to presume that notice of an exposure of almost $120,000 on a $64,000 contract would be a material factor in how one approached an arbitration.
As we recognized in Kimm, arbitration is "at its heart, a creature of contract." Kimm v. Blisset, supra, 388 N.J.Super. at 25, 905 A.2d 887. "An arbitrator's powers are limited by the agreement of the parties." Id. at 25, 905 A.2d 887. "[I]n the absence of an express agreement about the scope of the arbitrator's duties, ordinarily the arbitrator is limited to resolving the dispute in question." Id. at 25-26, 905 A.2d 887. Here, the "dispute in question" was not defined by the parties to include any claim for treble damages; hence, the arbitrator lacked the authority to address and impose that extraordinary remedy, sua sponte. See N.J.S.A. 2A:23B-23(a)(4) (authorizing relief from an award where an arbitrator exceeds his or her powers) and N.J.S.A. 2A:23B-23(a)(5) (authorizing relief where there is no agreement to arbitrate). Indeed, although it was unnecessary for them to do so, the parties expressly cited to the Arbitration Act's vacature provision, N.J.S.A. 2A:23B-23, in paragraph ten of their arbitration agreement.
The present circumstances may be analogized to those we encountered in a litigation context in R. Wilson Plumbing & Heating, Inc. v. Wademan, 246 N.J.Super. 615, 588 A.2d 444 (App.Div.1991). In that case, a contractor sued a homeowner to collect on an unpaid repair bill. Id. at 616, 588 A.2d 444. The homeowner counterclaimed, alleging that the contractor's repairs were unworkmanlike. Ibid. The counterclaim specified that the homeowner was seeking to recover the costs of correcting the defective work. Ibid. After a bench trial, the trial judge concluded that not only had the contractor's work been improperly done, but also that it violated the Consumer Fraud Act, thereby entitling the homeowner to treble damages up to *483 the Special Civil Part's jurisdictional limit. Ibid.
However, consumer fraud had not been asserted in any of the pleadings in R. Wilson Plumbing. Id. at 617, 588 A.2d 444. "The judge's letter opinion was the first injection of consumer fraud into th[e] case, and entry of a judgment on a consumer fraud cause of action was therein directed without any prior notice to [the contractor] and without affording it any opportunity to meet that cause of action either legally or factually." Ibid. Because of the lack of fair notice to the contractor, we vacated the trebled portion of the damages and directed that the judgment be modified accordingly. Id. at 619, 588 A.2d 444.
The case at hand parallels R. Wilson Plumbing. We do not quarrel with the arbitrator's factual determinations regarding the substantial nature of the deficiencies in Plosia's work. Nor do we question the merit of the arbitrator's recognition that several of those deficiencies amount to violations of the Consumer Fraud Act. Nonetheless, Plosia was entitled to reasonable notice that he was facing the statutory punch of the Consumer Fraud Act before he stepped into the arbitration ring. His adversaries, perhaps because of their status as laypersons presumed to be without legal training, failed to supply such notice required by these principles and by N.J.S.A. 2A:23B-9 in their arbitration statement. We are thus constrained to excise the treble damages portion of the arbitrator's award.
The arbitrator's award of counsel fees presents a closer question. Under N.J.S.A. 2A:23B-21(b), an arbitrator may award reasonable attorneys fees and costs to a prevailing party "if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties[.]" Id. We read that provision, however, as subject to the principles of fair notice we have already espoused. The Blocks' arbitration statement does include an itemized claim for $2,169.60 in attorneys fees, included on the list of "costs incurred to date." Accordingly, Plosia could not have been surprised that the arbitrator awarded those claimed fees to the Blocks. However, the Blocks' statement is bereft of any indication of the legal basis for fee shifting.
Given these particular circumstances, we conclude that it is most equitable, and most consonant with the objectives of the arbitration statute, to sustain the $2,169.60 counsel fee award but also to cap the Blocks' fee recovery at that amount, in spite of the additional legal services they received after that sum had been tabulated. In that regard, we recognize that Plosia's legal arguments on this appeal and in the trial court have been partially successful, and that the legal issues involved are novel. We do note that, in future cases arising after this opinion, parties in arbitration who seek counsel fees will be expected to apprise the opposing party before the arbitration hearing of the legal authority upon which such counsel fees are sought, as an exception to the usual "American Rule" in which each side presumptively bears its own legal expenses. See R. 4:42-9.[6]
Affirmed in part, modified in part, and remanded for the entry of judgment consistent with this opinion.
NOTES
[1] Although the Blocks claimed to have paid the final $4,000 balance, the arbitrator found that the Blocks paid only $60,000 of the $64,000 contract price.
[2] Since the arbitrator's name and prior judicial service is not germane to our analysis, we shall refer to him as "the arbitrator."
[3] Pursuant to paragraph 9 of the arbitration agreement, the proceedings were not transcribed.
[4] Among other things, the arbitrator found that Plosia failed to supply the Blocks with an adequate description in the construction agreement of the work to be performed and the materials to be used. See N.J.A.C. 13:45A-16.2 (a)(12)(ii). The arbitrator also found that Plosia violated N.J.A.C. 13:45A-16.2(a)(7)(ii) and (iii) by failing to complete the work on time and failing to give the homeowners timely written notice of any reasons beyond his control for the construction delays. Further, the arbitrator ruled that Plosia had wrongfully requested the Blocks to make final payment before the home improvement was completed and the final inspection certificates were procured. See N.J.A.C. 13:45A-16.2(a)(6)(v) and 16.2(a)(10)(ii).
[5] In the course of the arbitration, Plosia had acknowledged that he owed the Blocks at least $8500 for certain incomplete items.
[6] Although it is not relied upon in the Blocks' appellate brief, we have duly considered the potential application of N.J.S.A. 2A:23B-25 (authorizing the discretionary allowance of counsel fees and costs expended in enforcing an arbitration award), and have concluded that no such shifting of post-award costs and fees is warranted in this particular case.